BRADFORD AND WIFE *vs.* GREENWAY, HENRY AND SMITH.

1. The remedy in equity against the wife, to charge her separate estate with the payment of debts contracted by her jointly with her husband, is independent of the legal remedy against the husband, and may be resorted to, although such legal remedy has not been exhausted.

2. Where the deed, by which property is settled to the separate use of a married woman, provides that she shall have "the complete control of it as though the marriage had never taken place," and contains no restraint on alienation, she is to be deemed in a court of equity, with respect to such property, as *feme sole*, and may, by her agreement freely entered into, charge it for the payment of her husband's debts.

3. Where the annual proceeds of the separate estate of a married woman are insufficient to discharge, within a reasonable time, a debt with which such estate is chargeable, the chancellor may properly decree a sale of the property itself.

Error to the Chancery Court of Madison. Tried before the Hon. D. G. Ligon.

The facts are sufficiently stated in the opinion of the court.

Robinson, for the plaintiffs in error :

1. There was a full and adequate remedy at law; this remedy should have been exhausted.—Vandergraff v. Medlock, 3 Port. 389; Morgan v. Crabb, ib. 473; Chandler v. Faulkner, 5 Ala. 569. This being the husband's debt, the bill should have shown a judgment against him and an execution returned *nulla bona*. Until that is shown, they could not go into chancery to condemn the separate estate of the wife to the satisfaction of the debt.—Forrest & Wife v. Robinson, 4 Port. 50; 1 Brown's Ch. Rep. 18 marg. (note.)

2. Can the wife bind her separate estate as security for her husband? The answer to this question depends upon the provisions of the will or deed creating this separate estate. If the instrument creating this estate gives the power to do so, she can so charge it; but if it does not give her this power, she cannot do it. In the M. E. Church v. Jacques, 17 Johns. Ch. 548, Chancellor Kent very ably reviews all the English cases upon

this subject. From this review it will be seen that in the English chancery courts there are two classes of decisions; the one holds that a married woman may charge her separate estate for any purpose and in any way, unless the deed of settlement contain some clause restraining her, and that if this clause impose a restraint upon one particular mode of alienation, or charging her separate estate, she may do it in any other; the other holds that she has only such power of disposition as is expressly given her by the instrument, and that she is confined to the mode specified in the deed of settlement—that she has no other power than that expressly and in plain terms given to her. The one class holds that the deed is a *general*, the other that it is a *special* enabling instrument. Which of these is the best, and to which will this court adhere? I hold that she derives all her powers from the deed of settlement, and not from the law. By the law, on her marriage all her powers are taken away and merged in the husband. If this be so, she can only exercise such powers and dominion as are expressly given her by the deed. If she derive her power from the law, that gives her the absolute right of disposal and alienation, and every condition, limitation, or restriction, intended to take away this *jus disponendi*, is utterly void.—Macqueen on Husband and Wife, 313. By a deed, vesting in a married woman a separate estate, this *jus disponendi* may be entirely taken away.—Ib. 311-12; 3 Bro. Ch. 347 (note.) Then admit the position, that by deed this *jus disponendi* may be taken away, and you admit what is *absolutely conclusive* to show that she derives all her powers from the deed, and not from the law.—Ewing v. Smith, 3 Dess. 417; Maywood & Patterson v. Johnson et al., 1 Hill's Ch. 228-30-36; Robinson v. Dart's Ex'rs, Dudley's Eq. 128-31; North American Coal Co. v. Dyett, 7 Paige 27—affirmed, 20 Wend. 576; Gardner v. Gardner, 7 Paige 112; Cummings & Pollock v. Williams et al., 1 Sandf. 17; Curtis v. Engel, 2 ib. 287; Rogers v. Ludlow, 3 ib. 104-8-9; Lancaster v. Dolan, 1 Rawle 231; Lynes' Ex'rs v. Crouse, 1 Barr 111; Rogers v. Smith, 4 ib. 93; Thomas v. Folwell, 2 Whart. 11; Dorrance v. Scott, 3 ib. 309; Wallace v. Coston, 9 Watts 137; Morgan v. Elam, 4 Yerg. 375; Marshall v. Stephens, 8 Hump. 159; Litton v. Baldwin, ib. 209; Doty v. Mitchell, 9 Smede & Marsh. 435; Montgomery v. Agricultural Bank, 10 ib. 567; Williamson v.

Bradford & Wife v. Greenway, Henry & Smith.

Beckham, 8 Leigh 20 ; Estate of M. Wagner, 2 Ashmead 451. The only American case which seems to have been well considered, holding the contrary rule, is the case of Jacques v. M. E. Church, 17 Johns. 548. There are two cases in 4th Port. —Forrest & Wife v. Robinson, and Sadler & Wife v. Houston. In both these cases the debt was the wife's, and they, therefore, cannot apply to this case.

3. But if I fail in these points, then another comes up : Is this contract binding upon her? Was it fairly obtained? Chancery will not permit a trust to fail for the want of a trustee ; and as there is no trustee in this case, the courts will hold the husband trustee.—Harkins v. Coalter, 2 Port. 463; Fellows, Wadsworth & Co. v. Tann, 9 Ala. 1003. Being trustee, when he makes a contract with his wife by which he is to be benefited, all the presumptions of the law are against its fairness. The proof shows that the payee in this bond had full notice of all the facts attending the transaction ; and I think these facts show that this bond is void.

CLAY & CLAY, for the defendant :

1. It is objected, that there is no allegation of the issuance and return of execution against Larkin Bradford in the suit at law, and it is said that execution ought to have been issued and returned *nulla bona*, before proceeding against Mrs. B. in chancery. The object in issuing an execution would have been to ascertain the insolvency of Larkin ; it would have served no other purpose. There was no necessity for a pursuit of the co-obligor at law.—Forrest et al. v. Robinson, ex'r, 4 Port. 44. Mrs. B. might have been sued alone (2 Story's Eq. § 1368) in equity, and there was no necessity for the issuance of an execution against her husband.

2. It is insisted, that the bond is a fraud on its face, because it represents the debt to be her own. There is no evidence of fraud, although it is attempted to prove it ; and fraud is not to be presumed, but must be proved.

3. A wife may bestow her separate estate upon her husband, by appointment or otherwise, as well as upon a stranger.—2 Story's Eq. Jurisp. §§ 1395-6. She may *give* it to her husband.—2 Roper's Hus. & Wife, 220. The consent of the wife will authorise a court of chancery to apply a woman's property

to the payment of her husband's debts.—2 Roper 226. What better evidence of consent than a bond solemnly executed and attested by a witness?—See also 2 Story's Eq. § 1400.

4. If the marriage contract does not expressly give her special power or control to sell and dispose of her property, it does not deny it, and it, in general terms, places it " as completely under her control" as before marriage. When property is limited to the separate use of a married woman *generally*, without giving to her any particular power of disposition, she may sell, pledge or encumber it in the same manner as if she were a *feme sole.*—Jaques v. Methodist Church, 17 Johns. 577.

5. The bond is a special charge on her separate estate for value by her received, which renders her liable.—Clancy on Married Women, ch. 9, 333-4. The law summed up—ib. 346.

6. But, if there had been no special charge or express lien upon the separate estate, the joining with her husband in the execution of a bond is sufficient to render it liable.—Clancy 346; 2 Story's Eq. Jur. 1400-1; Norton v. Turrill, 2 P. Wms. 144; 2 Roper on Husb. & Wife, 240-42, and note; Hulme v. Tenant, 1 Brown's Ch. 16; Gardner v. Gardner, 2 Wend. 526; Forrest et al. v. Robinson, ex'r, 4 Port. 44; Sadler et ux v. Houston & Gillespie, ib. 208; Hoot et al. v. Sorrell et al., 11 Ala. 404-5.

7. But it is insisted, if Mrs. B. is liable at all, it is only out of the profits of her estate. 1. This principle may apply in England as to the real estate, which cannot be sold there for any debt, but it does not apply even there as to the personalty.—2 Roper 240, note a; Norton v. Turrill, 2 P. Wms. 144. 2. The principle does not hold here at all.—4 Port. 44, 208; 17 Johns. 579; 22 Wend. 536. 3. It would take more than 35 years to pay the debt.

CHILTON, J.—This bill was filed by the firm of Greenway, Henry & Smith, to recover satisfaction out of the separate estate of Mrs. Louisa Bradford, wife of Larkin Bradford, of a bond in the following words: "by the first day of January 1846, we promise to pay Joseph B. Bradford, nine hundred and eighty-one dollars and forty-nine cents, with legal interest thereon from the first day of January last, it being for value by the undersigned, Louisa, received, and for which she hereby promises that

her separate estate shall be liable. In witness whereof we have hereunto set our hands and seals.—Larkin Bradford (seal.) Louisa Bradford, (seal.)" Dated May 1844. The bill avers that the makers of the note were sued at law by the complainants, who are the assignees thereof, and that Mrs. Bradford was discharged on the plea of coverture, but judgment was rendered against her husband, Larkin, who is utterly insolvent. It does not appear, however, that any return of "no property," &c., was had upon an execution on said judgment against him, previous to filing the bill.

It appears that the real consideration of the note was a debt due from Larkin, the husband, to the payee, Joseph B. Bradford, and that the wife signed the same without reading it, being requested by her husband "to go with him on a bond." She answers, admitting that she has a separate estate, secured by marriage articles to her use, and over which is reserved to her the same control as if the marriage had never taken place. She further admits that she intended by signing the note to become her husband's security, but insists that the peculiar wording of the agreement or bond, so far as it recites that the consideration was received by her, and that it should be a charge on her separate estate, was fraudulently concocted by the payee, &c. It is sufficient upon this point in the case to say, that upon a careful examination of the record, the charge of fraud contained in the answer is not sustained by the proof. We think it more than probable that when Mrs. Bradford signed the bond, she was not apprised that these recitals were in it, but there is evidence that she could read and write, and that it was laid before her, and voluntarily signed, in the absence of all undue influence so far as the proof discloses.

The question raised upon the demurrer, to wit, that the legal remedy should have been exhausted against the husband before the complainants could resort to equity, we think, was very properly ruled by the chancellor. If there is a remedy in equity against the wife, it exists, independent of the legal remedy against the husband, and may be resorted to at any time. The rule which forbids a resort to equity to subject the equitable estate of a debtor to the payment of a judgment, or a simple contract debt, before exhausting the legal remedy, has no application to cases like this, where the equitable relief, if it exists at

all, is independent of the remedy at law. The first move, as against the wife, upon the bond must necessarily be in a court of equity, and her engagement, so far as the remedy of the creditor is concerned, is as distinct from her husband, as if she had executed a separate obligation to pay.

The main question in the case is, whether the separate estate of the wife can be subjected to the payment of a note executed by her as security for her husband, and on account of which she received no other consideration. I have carefully examined the ingenious and able argument of the counsel for the plaintiff in error, in which he depicts the gross frauds and abuses to which it may subject married women, (who are supposed to be under the power and influence of their husbands,) to hold that they may have the provision, made for the support of themselves and children, swept away from them to pay the husband's debts, because they have gone on his paper, and this too, when by the terms of the settlement, such provision is expressly exempted from the payment of his debts, and, indeed, is usually designed to provide against his improvidence, and to place the property entirely beyond his control. Perhaps, if the question were *res integra*, and the courts were called upon to strike out a line of decision, it would better comport with the analogies of the law, and more frequently subserve the purposes of justice, to hold, that in cases where no one was appointed to manage the estate, and the husband, consequently, must be regarded as the trustee for the wife, all engagements made by her, through his instrumentality, to bind her separate estate for the payment of his debts, should be decreed absolutely void, and incapable of being enforced in any court against her consent. But we take it, the law is settled otherwise by a long train of decisions, from which we do not feel at liberty, if we were so disposed, to depart.

Judge Story states the doctrine maintained by courts of equity upon this subject to be—first, that her separate property is not in equity liable for the payment of her general debts, or for her general personal engagements, in the absence of any act on her part to charge the same upon such separate estate; secondly, that her separate estate will be liable for all the debts, charges, incumbrances, and other engagements, which she does, expressly, or by implication, charge thereon.—2 Story's Eq. Juris. §§ 1398, 1399; thirdly, "the fact that the debt has been contract-

ed during the coverture, either as a principal, or as a surety, for herself, or for her husband, or jointly with him, seems ordinarily to be held *prima facie* evidence to charge her separate estate, without any proof of a positive agreement to do so.—Ib. § 1400.

The Lord Chancellor, (Thurlow,) in Hulme v. Tenant, 1 Bro. C. C. 16, deduced the *intention* of the wife to bind her separate estate from the fact that she executed, jointly with her husband, a bond for £50 borrowed by him, and which, upon borrowing an additional sum on her own account, she afterwards renewed, embracing the whole amount in a bond executed by herself alone. This case has been doubted by Lord Eldon, (Nantes v. Corrock, 9 Ves. 188; and Jones v. Harris ib. 497;) but Mr. Roper thinks that Lord Thurlow could not have made any other decree than that which was pronounced—2 Roper, Hus. & W. 241. He says, moreover, that it has been followed by subsequent cases, citing Heatly v. Thomas, 15 Ves. 596, where the wife's bond was held to create a charge upon her separate estate, also Bullpin v. Clarke, 17 Ves. 305, and Stewart v. Kirkwell, 3 Madd. 387, where the same principle of decision was held, in respect to her promissory notes. "These cases," says he, "may be considered as establishing, that the separate estate of a married woman is liable to debts for which she has given a written security."—2 Roper Hus. & W. 241, note A.; Standford v. Marshall, 2 Atk. 69; see also, 1 Bro. Ch. Rep. (by Perkins) 14, note 1; Gardner v. Gardner, 22 Wend. 526, 528; Coats v. Robinson, 10 Miss. Rep. 757. It is, says Chancellor Kent, "sufficient that there is an intention to charge her separate estate, and the contracting of a debt by her during coverture is a presumption of that intention; and the later decisions hold her separate estate responsible without showing any promise. Her contract amounts to an appointment."—2 Kent's Com. 164. But it is said that in marriage settlements, designed usually to secure to the wife a certain support, and to provide against her being overwhelmed by the misfortunes, unkindness, or vices of her husband, courts of chancery, endeavoring to carry out the true intent and design of them, consider the wife, in respect to her separate estate thus settled, as a *feme sole, sub modo* only, or to the extent of the power clearly conferred upon her by the marriage settlement.—2 Kent, 165. Giving this principle its full

application to the case before us, and still it does not aid the plaintiffs in error, since the marriage settlement before us expressly confers the power on the wife to control the property, as though the marriage had not taken place. It would be difficult to find language confering upon the wife a more unlimited dominion over the property; she may use it or control it as though she were sole, and as it would have been subject to her appointment, had she continued sole, so it is now. As to the wife's power of disposing of her separate property, &c, see an able note in which the authorities are collated.—2 Kent's Com. 6 Ed. 164, top page, note b, and cases cited in note 2, p. 166.

In cases of this nature, the main argument, says Judge Story, is that the security must be supposed to have been executed with the intention that it should operate in some way; and, that it can have no operation, except as against her separate estate. It may well become a question whether the circumstances of this case do not show, aside from the mere wording of the agreement, that it was the intention of the wife to charge her estate. In the first place, the husband was insolvent, and this fact is entitled to some weight in determining whether, at the time she became bound, she did not expect to have the demand to pay, and whether she did not contract in view to a settlement of it out of her separate estate, the only means she possessed for its payment. In the second place, she became bound jointly with her husband, signing the bond without reading it or inquiring for its contents, thus showing an indifference as to its provisions, whether it amounted to a general promise to pay, or a specific appointment of her separate estate for its satisfaction; an indifference hardly reconcilable with the idea that her estate was not intended to be looked to for the satisfaction of the demand. Be this as it may, when we look to the plain wording of the instrument, against which, at most, there is but the merest suspicion of combination or unfairness, we feel constrained to hold that the debt is properly chargeable upon the separate estate of Mrs. Bradford.

But it is contended that the established American doctrine is, that the wife has no power by law to contract, and the deed, under which she holds the property, must confer on her the power to sell or charge her estate, else, she has no such power. Many cases may be found, and a goodly number have been cited, showing, that when in the deed of settlement the power of disposition

is confered, to be exercised in a particular way, that mode of disposition must be observed, but I apprehend the courts have not gone to the length of holding, that the manner of disposition must necessarily be specified in the deed of settlement, in order to the existence of the power. The law, which does not favor a restraint upon the alienation especially of personal property, annexes this power as necessarily resulting from "the complete control" and ownership of the property by the wife, the power being reserved to her in the deed to control it, as though the marriage had never taken place. So that conceding that the wife derives no power from the law, but only from the deed, to dispose of her estate, we think the deed in this case gives it, not, it is true, in direct terms, but by necessary inference. She is to be regarded as a *feme sole* in respect to it, and, therefore, may charge it by her contract, although she cannot personally charge herself.—Jaques v. Methodist Episcopal Church, 17 Johns. 548, (Spencer, C. J. 576,) and cases cited. We hold, that where a married woman has property settled upon her to her separate use, and the deed of settlement provides that she shall have "the complete control of it as though the marriage had never taken place;" and contains no restraint on alienation, she is to be deemed in a court of equity, with respect to such property, as a *feme sole*, and may, by her agreement freely entered into, charge it for the payment of her husband's debts. This is the case before us, and beyond this, we need not go. To hold otherwise in this case, we should feel that we had violated the true intent and meaning of this contract of settlement, as it is manifest the wife designed to retain the same power and dominion over her estate embraced in the settlement, after the solemnization of the intended marriage, as she possessed previous thereto, and at the time of entering into the contract. The English cases go quite beyond this, and in my opinion fully sustain the Court of Errors in the conclusion attained in the case of Jaques v. Methodist Episcopal Church, *supra*.—1 Sug. on Powers 208.

We deem it unnecessary to comment upon the various cases cited, and which we have examined, as in our opinion, the facts of this case take it without the influence of them, unless indeed we are prepared to go with the courts of equity in So. Carolina, and hold "that the wife cannot, by her own act merely, charge her separate estate, but the court will look to the circumstances,

and determine whether a proper case exists, even though the appropriation was by herself for the necessary support of herself and family."—Maywood v. Johnson, 1 Hill Ch. 236, cited, 2 Kent's Com. 6 Ed. n. a, p. 164; Ewing v. Smith, 3 Eq. Rep. 147. Such is not the doctrine which has obtained in this State: Forest et al. v. Robinson, 4 Por. 44; Sadler and Wife v. Houston & Gillespie, ib. 208; Hoot et al. v. Sorrell, 11 Ala. 386, in which last case many of the cases are cited, sustaining the view here taken.

As the wife in this case is entitled to the absolute property in the slaves sought to be subjected, and their hire would not within any reasonable time satisfy the demand, we think the chancellor correctly decreed that, unless the debt was paid by a given time, the property should be sold to an amount sufficient to satisfy the demand.

Our conclusion upon the whole case is, that the decree of the chancellor must be affirmed.