## NUNN'S ADM'R vs. GIVHAN'S ADM'R.

[BILL IN EQUITY, AFTER HUSBAND'S DEATH, TO SUBJECT AN ESTATE HELD BY THE WIFE TO HER SOLE AND SEPARATE USE, &C., UNDER DECREE OF CHANCERY COURT, FOR PAYMENT OF PROMISSORY NOTE, MADE BY HER AND OTHERS DURING COVERTURE, IN PAYMENT OF HUSBAND'S DEBT.]

1. *Separate estate by contract; when wife will be inferred to intend to charge.* If a *feme covert* who has a separate estate by contract, jointly makes with her husband a promissory note for the husband's debt, if she has a separate estate by contract, it will be inferred, in a court of equity, that she thereby intends to charge such separate estate with its payment.

2. *Separate estate, of married woman; what does not constitute.*—Real es-

tate that came to a *feme covert* by descent, before our present system in relation to the estates of married women, was not her separate estate. The husband, by the marriage, during coverture, was entitled to the possession and management of it, and to receive the rents and profits thereof.

3. *Same; what proceedings in chancery do not change character of estate.* A bill filed by a *feme covert* in 1845, against her husband, to have real estate, so descended, sold, and the proceeds settled in the hands of a trustee to her separate use for life, and after her death to her children ; a decree conforming to the prayer of the bill, directing the same to be sold by the register, on a credit, and a note and mortgage to be taken to secure the payment of the purchase-money, and that the proceeds be settled in trust to her separate use for life, and after her death to her children ; and also, that a trustee be appointed by the register, to take the charge and management of the trust estate thereby contemplated, and that he account annually, and abide by such orders and decree as might be made touching the property. although such decree may determine the right of the plaintiff to a settlement, it does not, before a sale is actually made, change the character of the estate ; until a sale the proceeding continues under her control, and she may abandon her claim to a settlement, or dismiss her bill ; and further, if no step be taken to have the decree carried into effect, for some eighteen years, and the husband then dies, the necessity for a settlement thereby ceases to exist ; and, if the wife afterward dies, a settlement becomes impossible, and the estate will descend to her heirs at law.

4. *Same ; what bill seeking to change such estate, without equity.*—If, after such a decree is made, the wife, with her husband, makes a promissory note for the payment of the husband's debt, and after the death of the husband a bill is filed against the widow by the holder of said note, or by his personal representative, to subject such real estate, or to subject the rents and profits that have accrued, after the death of the husband, to the payment of said note, such bill is without equity, and may be dismissed on the hearing for that reason.

APPEAL from Chancery Court of Lowndes.
Heard before Hon. ADAM C. FELDER.

THE facts of this case may be stated as follows :   In the year 1860, the appellant held as assets of his intestate a judgment in favor of one Jackson, against George Givhan, and in satisfaction of the same took a promissory note made by said George Givhan, Sarah, his wife, and Philip Givhan. The satisfaction of said, judgment was the sole consideration of said notes.   At the time of its execution, Mrs. Givhan owned considerable real estate, which, it is alleged in the bill of complaint, was held " by her to her sole and sep-

arate use, and said estate was so set apart to her by decree of the chancery court of Lowndes, in 1846."

Mrs. Givhan married in 1836. Her father, Drury Fort, died intestate the same year, leaving a large estate, which descended to her and her brother, John Fort. Her brother died intestate in 1845, leaving her his sole heir. Givhan having become deeply involved, and his creditors having already seized on legal process a number of negroes received by him as part of Mrs. Givhan's share of her father's estate, Mrs. Givhan filed her bill in the chancery court of Lowndes in the year 1845, praying that all of the estate of her father and brother in the hands of her husband, as well as that part yet to be received by her, be settled on trustees to be appointed by the court, to her sole and separate use during her natural life; and at her death to her children.

At the June term, 1846, Hon. Anderson Crenshaw, Chancellor, granted the relief prayed for, and decreed, among other things, " that all of the property of the estates of the father and brother of complainant in the hands of her husband, George Givhan, as well as that part of said estates not yet administered, to which complainant is heir, be settled in trust for the sole and separate use of complainant during life, and at death to her lawful heirs.    *    *    * That the master sell the lands, &c., on a credit of twelve months, and that the proceeds of the sale be settled in trust for the sole and separate use of Sarah L. Givhan, during life, and at her death to her lawful heirs, &c.    *    * * That the master appoint a proper and suitable person trustee, to take charge of the trust estate hereby contemplated, and that he give bond, &c., for the faithful performance of his duty, and to account annually, and to abide such order and decree as may be made touching said trust property." Under this decree, a trustee was appointed by the register, but no sale of the land was made, and nothing else seems to have been done under the decree.

The bill is filed by Theodore Nunn, as administrator of David Nunn, deceased, against Mrs. Givhan, and seeks to charge the lands, or the rents and profits thereof, as may be necessary, held by her (under the decree of the chan-

cery court heretofore set out,) with the payment of the notes. Geo. Givhan, husband of appellee, died in 1864, and his wife administered his estate, which had been duly declared insolvent, &c. Philip Givhan left no estate. Mrs. Givhan is the sole defendant to the bill.

In 1867 the death of Mrs. Givhan was suggested, and the cause revived against her administrator. She left surviving her two children of full age.

There was an answer by the administrator, who assigned numerous grounds of demurrer to the bill, &c.; but in the view taken of the cause by the court, it is unnecessary to notice them, or the cross bill filed by one of Mrs. Givhan's children.

The chancellor dismissed the bill on final hearing, and taxed complainant with the costs, and hence this appeal.

The decree of the chancellor is now assigned for error.

R. M. WILLIAMSON, for appellant.—1. The first question is, did the decree vest the property in Mrs. Givhan immediately, or was it conditioned upon a sale of the land? For the purpose of vesting immediately in such cases, the law considers land, when it is directed to be sold and the proceeds disposed of, as money to carry out the disposition.—*Wheeldale v. Pachridge*, 5 Ves. 395; *Fletcher v. Achbronin*, 1 Bro. C. C. 497; *High v. Worley*, 33 Ala. 196.

2. The legal title was never vested in the trustee, but he was to take "charge and management" of it. But if the legal title vested in the trustee, it would make no difference.—See *Blevins v. Buck*, 26 Ala., in which the property was vested in the trustee.

3. The fact that the trustee was to abide the direction of the chancellor, is nothing more than any trustee must do. The wife's right of disposition is independent of the trustee, unless the deed restricts. The property, in *Blevins v. Buck, supra*, was settled by the decree in a trustee for support, and maintenance, and a new trustee was appointed, showing that it was an estate arising out of chancery.

4. That the complainant has no remedy at law.—*Vance v. Wells*, 6 Ala. 737; S. C. in 8 Ala. 399; *Blevins v. Buck, supra*.

5. The equitable remedy against the separate estate of the wife is independent of the liabilities of the husband, and can be proceeded on as if her agreement was separate from his obligation.—*Bradford v. Greenway*, 17 Ala. 797.

6. It is not necessary to create the charge that the intention to do so, should be stated in the contract.—*Ozley v. Eikelhemer*, 26 Ala. 332; *Bradford v. Greenway, supra ; Collins v. Rudolph,* 19 Ala. 616; *Watkins and Wife v. Smith,* 28 Ala. 569; *Stewart v. Kirkwell,* 3 Mad. 387.

7. The heirs of George Givhan have no interest in the subject matter of this suit, and they would be improper parties.    The direction of the chancellor was asked as to making proper parties.

8. The bill charges that defendant holds the property as her "sole and separate estate," and refer to the decree as the source from which she derives her title, which is at the command of this court.    That the averment is sufficient, see *Cowles v. Morgan,* 34 Ala. 535.

9. That fact that the estate is a trust estate, does not disable the wife from charging for her contracts, and the assent of the trustee is not necessary.—*Blevins v. Buck,* 26 Ala. 292; *N. A. Coal Co. v. Dyett,* 7 Paige, 1.

10. The decree is the source from which defendant derives title ; the words used convey an absolute estate to Mrs. Givhan.—*Ewing v. Standifer,* 17 Ala. ; *Lloyd v. Rambo,* 29 Ala.

11. The court, under the circumstances, had jurisdiction to settle the real estate to the sole and separate use of the wife ; it was done at the request of the wife, and by consent of the husband.    She derived an advantage from the settlement, for by it her husband was deprived of the rents for life, by the courtesy.—*Haviland v. Meyers,* 6 J. R. C. 25.

12. The land, by the decree, was changed from real to personal property.

Cox & Witcher, *contra.*

[Appellee's brief did not come into Reporter's hands.]

PECK, C. J.—This court, following the English decis-

ions, and, we think, in some cases, going even beyond them, has held that a *feme covert*, having a separate estate by contract, if she makes a promissory note with her husband, for the payment of her own debt, or that of her husband, it will be implied that she thereby intends to make the payment of the debt a charge upon her separate estate.—*Bradford and Wife v. Greenway, Henry and Smith*, 17 Ala. 797; *Collin et al. v. Larenberg & Co.*, 19 Ala. 682; *Collin et al. v. Rudolph*, 10 Ala. 617; *Caldwell v. Sawyer*, 30 Ala. 283; *Cowles and Wife v. Morgan*, 34 Ala. 535; *Gunter v. Williams and Wife*, 40 Ala. 561; and other cases.

We feel constrained to say we cannot approve of these decisions, so far at least as they are held to apply to notes made for the payment of the husband's debts; as, however, they have become the law of this court, we do not feel at liberty to depart from or overrule them, but we can not consent to extend them to cases not clearly and strictly within the principles settled by them.

We think the true rule should be, that if a *feme covert*, having a separate estate by contract, with her husband, makes a note, bond or other document in writing, for the payment of the husband's debt, that thereby, *without more*, no charge for its payment is created upon her separate estate; that no implication or inference, in any case, should be made against her, that she intends to make the payment of a note, or other promise in writing, a charge upon her separate estate, unless the consideration thereof be for her benefit; and we should so rule, if it were a question of first impression, in this court.

Where the note or written promise of a *feme covert* makes no direct charge upon her separate estate, it is held that it becomes a matter of intention whether a charge is or is not thereby created. Mr. Story says, "it is agreed that there must be an intention to charge her separate estate, otherwise the debt will not affect it."—2 Story Eq. 1400. But, it is said that by making the note or promise, it is to be inferred, *prima facie*, that she intends to make its payment a charge upon her separate estate. On this subject, Mr. Story further says in the same section, that "the fact that the debt has been contracted during coverture, either

as principal or as a surety for herself or her husband, or jointly with him, seems ordinarily to be held *prima facie* evidence to charge her separate estate, without any proof of a positive agreement or intention to do so."

The reason given for this is, that the security must be supposed to be executed with the intention that it shall operate in some way; and that it can have no operation, except as against her separate estate. This may be a plausible reason, where the consideration of the security is for the benefit of the wife; but where the consideration is not for her benefit, it seems to us to be an unsafe, if not wholly an insufficient reason, to justify a court of equity in decreeing the payment of the debt against the wife's separate estate.

We feel persuaded that this supposed intention, in a large majority of cases, will be found not to accord with the truth, when considered in connection with the many influences that may be, and no doubt too often are, brought to bear, upon a loving and trusting or a timid and fearing wife; influences that can seldom be proved, and, if proved, can hardly be justly estimated or duly appreciated by either judge or court.

Without saying more on this subject, but confining the foregoing decisions to cases where the separate estate is created by contract, we think it manifest the appellant is not entitled to the relief prayed in his bill of complaint.

The lands out of which he seeks the payment of the notes named in his bill, came to Mrs. Givhan by descent from her father and brother, and were not, in any sense, her separate estate; her husband, by his marital rights, being entitled to the possession and to the rents and profits during the coverture; she had, therefore, no power to charge them with the payment of either her own or her husband's debts.

The decree of the chancellor, on her bill filed in 1845, was not intended to settle these lands on her; the prayer of the bill was, that the lands might be decreed to be sold, and the proceeds of the sale, when realized, be settled in the hands of a trustee to the separate use of herself for life, and after her death to her children.

The decree conforms to the prayer of the bill, and directs

the register to sell the lands at public outcry, on a credit of one year, and to take notes with good security, and a mortgage on the premises, to secure the payment of the purchase-money; and that he should appoint a trustee to take the charge and management of the trust estate *thereby contemplated*, and to account annually, and to abide by such orders and decree as might be made by the court touching said trust property.

This decree, although perhaps final as determining the right of the wife to a settlement, was substantially in all other respects preliminary and interlocutory.

A trustee was appointed by the register, but before any sale was made under the decree, the parties, both husband and wife, died, and no sale was ever made; consequently no trust estate ever came to the hands of the trustee to be settled to the use of the wife.

George Givhan, the husband, died in 1864, and the death of Mrs. Givhan, the wife, and defendant to this bill, was suggested at the April term of the chancery court, in 1867.

Why this decree was not executed before the death of the parties, we are not informed.

George Givhan, the husband, lived nearly eighteen years after the said decree was made, and during all that time no step was taken to have the same carried into effect, or in any wise to proceed further with the case.

If this did not amount to an abandonment, on the part of Mrs. Givhan, of her right to a settlement, it would seem that the necessity for a settlement ceased to exist after the death of the husband; and, after the death of the wife, it became impossible, there then being no person upon whom it could be made. However this may be, we hold that Mrs. Givhan, by virtue of these proceedings, under the circumstances, acquired no separate estate, either in the lands or in the rents and profits that accrued after the death of her husband, that can be charged with the payment of the notes named in the complainant's bill.

The said decree, and the proceedings in which it was rendered, until a sale of the lands was actually made, and the proceedings vested in the hands of the trustee, remained and continued *in fieri*, and did not pass beyond the

power and control of Mrs. Givhan. She might have declined to proceed further with the case, or have dismissed her bill; and her death must be taken to have the same effect. Therefore, the character of the lands which it was the purpose of her bill to have sold and the proceeds settled in the hands of a trustee to her separate use, was never changed, and on her death they descended to her daughter, Mrs. Anna Jane Fourquerean, her heir-at-law, as though the bill of her mother had never been filed; consequently, at the time the notes for the payment of her husband's debt were made, she had no separate estate which, even by implication, could then, or can now, be charged with their payment.

Let the decree of the chancellor, dismissing the bill of complainant, be affirmed at the costs of the appellant.