# Kelly *v.* Turner; Masson *v.* Turner.

*Bills in Equity by Creditors, to subject Equitable Estate of Married Woman; Cross-Bill for Reformation of Deed.*

1. *Reformation of deed, on ground of mistake.*—An erroneous opinion as the legal effect and operation of a conveyance, developed by events subsequent to its execution, is a mistake of law, and furnishes no ground for a reformation of the deed.

2. *Judicial decisions overruling former decisions; effect on titles and contracts.*—When titles have been acquired, judgments rendered, contracts performed, or transactions completed, based on judicial decisions which are afterwards overruled or reversed, titles and rights thereby acquired are not annulled or affected by such change in the judicial decisions; but this principle can not be so applied as to require that legal effect and operation shall be given to a conveyance according to the judicial decisions of this court which were of force when it was executed, which decisions were in conflict with repeated former adjudications, and have since been expressly overruled by later cases declaring and re-establishing the former decisions.

3. *Equitable estate of married woman; priority of liens among creditors.* In charging the equitable estate of a married woman with her contracts and engagements, a court of equity does not proceed on the theory that they are valid and operative as appointments or appropriations by her of so much of her estate as may be necessary to satisfy them, but on the principle of her presumed intention to do a valid act, and therefore to charge the estate which she has full capacity to charge; but her contracts do not create a lien or charge on any specific property, such as is created by the filing of a bill in equity; and when bills are filed by several creditors, seeking to charge and condemn the same property, the priority of their liens is determined by the time when their respective bills were filed, and not by the time when their debts were created.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

In these several cases, which were heard together in the court below, and were argued and submitted as one case in this court, bills in equity were filed by several creditors of Mrs. Emma C. Kelly, a married woman, against her and her husband, Washington C. Kelly, seeking to subject to the payment of the complainants' several debts Mrs. Kelly's interest in certain real estate in the city of Mobile, which was alleged to be held by her as an equitable estate. Mrs. Kelly was a daughter of Hope H. Slatter, deceased, and inherited from him an undivided one-fourth interest in the said real estate; and she obtained another undivided one-fourth interest from each of her brothers, S. F. Slatter and H. H. Slatter, under conveyances executed to her by them. The conveyance from H. H. Slatter was

33

dated November 6th, 1869, and duly acknowledged and recorded
on the same day; purported to be executed "in consideration
of the love and affection" of the grantor for his said sister,
"as well as in consideration of the sum of $9,000 paid to me
[him] by the said Emma;" and conveyed to Mrs. Kelly the
grantor's undivided one-fourth interest in the property, "to
have and to hold the said property, together with the appur-
tenances, unto her, the said Emma C. Kelly, as her separate
property and estate, free from the debts and liabilities of her
husband, and to her heirs and assigns forever." The convey-
ance from S. F. Slatter was dated August 3d, 1871, and was
duly acknowledged and filed for record on that day; used the
same words of conveyance, and recited as its consideration the
present payment of $16,000; but of this amount only $8,000
was paid in cash, and for the residue two promissory notes were
given by Mrs. Kelly and her husband, each for $4,000, payable
one and two years after date, and secured by mortgage on the
land conveyed.

The first bill, in the order of time, was filed on the 3d Jan-
uary, 1877, by Mrs. Anna G. Turner and her husband. Mrs.
Turner was the niece of Mrs. Kelly, and her debt was con-
tracted for a loan of money belonging to her statutory estate,
for which Mrs. Kelly and her husband executed their promis-
sory note for $5,000, dated March 27th, 1873; which note was
renewed on the 27th March, 1874, and again on the 27th March,
1875, the interest having been paid annually. The second bill was
filed on the 28th February, 1877, by James H. Masson, who
claimed to be the owner of one of the notes for $4,000 above
mentioned, and to have purchased it for valuable consideration,
before maturity, in the regular course of trade; and having
obtained a decree foreclosing the mortgage given to secure the
payment of said notes, the unpaid balance of the decree in his
favor, after applying the proceeds realized by the sale under
the decree, was the debt to which he sought to subject Mrs.
Kelly's remaining interest in the land.

Mrs. Kelly filed an answer to each of these bills, admitting
the execution of the several conveyances as alleged; but she
denied that either of the conveyances created, or was intended
to create, or could create in her, an equitable estate, so far as
the money paid was, in each case, a part of her statutory estate,
which could not be converted into an equitable estate. She al-
leged that, at the time of the execution of the conveyance to
her by H. H. Slatter, she held a mortgage on S. F. Slatter's in-
terest in the property, to the amount of about $4,500, and had
other moneys due to her in New Orleans, which also belonged
to her statutory estate; that said H. H. Slatter then proposed
to her, if she would release said mortgage, and pay him $4,500

besides, out of her moneys and the claims due her in New Orleans, that he would convey to her his one-fourth interest in the property; that she accepted this offer, which was very liberal on his part, and left her husband and said H. H. Slatter to have the deeds prepared; and that she never read over the deed executed to her by her said brother, either before or after it was delivered to her. She alleged, also, that the money borrowed by her from Mrs. Turner was, as Mrs. Turner well knew at the time, borrowed for the use and benefit of said W. C. Kelly, and was used and wasted by him; that Mrs. Turner was well acquainted with the condition of her property, and knew that it was all inherited from her father, or bought with moneys so inherited, and could not be subjected to the payment of her husband's debts, or of her own contracts not specially authorized by law; that Masson was not an innocent purchaser of the note held by him, but bought it at a discount, and knew the consideration on which it was founded; and she insisted that said note was not a charge on her interest in the land acquired under the conveyance from H. H. Slatter.

On 12th February, 1877, after the filing of Mrs. Turner's bill, H. H. Slatter executed a deed to Mrs. Kelly, on her application, which, after referring to his former deed as having been made in consideration of $9,000 to him in hand paid by Mrs. Kelly, contains the following recitals: "And whereas the money paid for said purchase of said interest was the separate statutory estate of the said Emma, derived to her by inheritance from her father and her uncle, which fact was well known to me at the time; and whereas it has been made known to me that it is doubtful whether said conveyance made by me to said Emma C. conveys to her a statutory separate estate, the same as the money paid to me and invested in the purchase of said property; and whereas it was not contemplated, at the time, to make any change in the tenure of her estate and property, but the same was an investment for her of her statutory separate estate; and whereas the said Emma has called on me to reform said conveyance," &c.; and it then conveys the property to Mrs. Kelly, "to have and to hold as her statutory separate estate under the laws of Alabama." On the 9th November, 1877, having filed her answers as above stated, Mrs. Kelly filed her original bill against her husband, said J. H. Masson, and Mrs. Turner, setting up this second conveyance from H. H. Slatter, and praying that it might be enforced and established as against the demands asserted by said complainants in their respective bills; setting forth the consideration of the conveyance executed to her by her brothers, as stated in her answers; alleging that there was no intention, on the part of either of said grantors or herself, to change the nature or character of

her estate; and praying that the conveyances might be reformed, if necessary (which she denied), and her statutory estate in the property be declared and established against the complainants' several demands.

The three causes being submitted together, the chancellor (Hon. H. Austill) overruled the demurrers interposed by Masson and Mrs. Turner to the bill filed by Mrs. Kelly, and rendered a decree in her favor; declaring that her statutory estate could not be converted into an equitable estate, and could not be subjected to the satisfaction of the demands asserted by Mrs. Turner and Masson, whose bills he therefore dismissed. On appeal to this court, by Mrs. Turner and Masson, the chancellor's decree was reversed, and the cause remanded; this court holding that a statutory estate might, with the consent and concurrence of the husband, be converted into an equitable estate in the wife; that this was the effect of the conveyance first executed to Mrs. Kelly by H. H. Slatter; that the interest thereby vested in her was subject to the demands asserted by Mrs. Turner and Masson, and that Mrs. Kelly was not entitled to a reformation of the conveyance. Stone, J., dissented from the opinion of the court, on the first point.—See the report of the case in 70 Ala. 85–100.

While proceedings were pending in these causes, as above stated, bills were filed by other creditors of Mrs. Kelly, seeking to charge their respective debts on the property described in the pleadings. One of these was said H. H. Slatter, who held one of the notes for $4,000 above described, and who had obtained, like Masson, a decree in the suit for the foreclosure of the mortgage, and claimed an unpaid balance still due him; another was George Metzger, and a third was Jane Floyd. A reference of the matters of account was ordered under each of these bills, and an account was stated by the register showing the amount due on each debt. The causes being all submitted together, and consolidated, the chancellor rendered a final decree in conformity with the opinion of this court, and ordered a sale of the property for the satisfaction of the complainants' several debts; declaring that Mrs. Turner, whose bill was first filed, was entitled to be paid first, Masson next, and the others in the order in which their bills were filed.

From this decree Masson appeals, and here assigns as error the priority declared in favor of Mrs. Turner. The other creditors join in this assignment of error, and further insist that all the creditors were entitled to be paid equally. Mrs. Kelly also appeals, and assigns as error the dismissal of her bill, and the decree granting relief under the creditors' bills.

Jas. Bond, for Mrs. Kelly.—Admitting the correctness, on

[Kelly v. Turner; Masson v. Turner.]

grounds of public policy, of the conclusion attained by the court on the former appeal, as to the power of the parties themselves to change the statutory estate of the wife into an equitable estate; it is earnestly insisted that, in this case, there was no intention to make such conversion; and that if the terms of the deed effect such a change in the character of the estate, it was contrary to the intention of the parties, and the result of a mistake which ought to be corrected. The testimony of H. H. Slatter, the grantor, is clear and emphatic, and is entirely uncontradicted and 'unimpeached. He gave no thought to the rents or income, which the husband was entitled to receive if the estate was statutory, but desired to invest the principal sum in such manner that it would be safe—in lands, which could neither be mortgaged nor otherwise charged with debts. And this was the legal effect of the conveyance as written, under the latest decisions of this court construing the statute.—*Molton v. Martin*, 43 Ala. 461; *Sprague v. Tyson*, 44 Ala. 338; *Glenn v. Glenn*, 47 Ala. 204; *Denechaud v. Berry*, 48 Ala. 591. These decisions of the court of last resort, while they were of force, were the law of the land, and business transactions were necessarily conducted on the faith of them. Of course, courts sometimes fall into errors, and it is proper that erroneous decisions should be overruled, as these have been; but care will be taken that a retrospective operation be not given to the later decisions, which will cause injury to innocent parties, who relied and acted on those erroneous decisions.—*Lyon v. Richmond*, 2 John. Ch. 59; *Huridgree v. Mitchum*, 51 Ala. 154. These creditors can not be injured by a reformation of this deed as asked by Mrs Kelly. They were well acquainted with the nature and character of her estate; they did not give her credit on the faith of any equitable estate, but relied on. her ability to pay them out of the ample income which she then enjoyed; and the circumstances all repel the idea of an intention, actual or presumed, to charge an estate which they did not then know she had in this property.

HAMILTONS, and MACARTNEY & CLARKE, for Masson; G. Y. OVERALL, and L. H. FAITH, for Mrs. Turner: F. G. BROMBERG, and J. L. & G. L. SMITH, for other creditors. (No brief on file.)

BRICKELL, C. J.—Notwithstanding the able argument of the counsel for Mrs. Kelly, we are constrained to adhere to the conclusion expressed when this cause was before the court at a former term. The pleadings and the evidence do not authorize a reformation of the conveyance under which she holds the premises sought to be charged with debts contracted by her, as it must be presumed, on the faith and credit of her equitable

separate estate.—*Turner v. Kelly*, 70 Ala. 85.   There can be, in view of the evidence, no denial that the conveyance is precisely such as was designed by the parties; nor can it be contended that there was an agreement it should be of a different nature and character.   There is no term introduced, which they did not intend, at the time of its execution, should be introduced; nor is there the omission of any term it was intended to introduce, nor, in any respect, any inapt expression of their purposes or agreement.   All that can be said is, that in view of subsequent events, if the legal incidents of the estate created had been fully apprehended, a species of conveyance would have been adopted relieving the estate from the liability now attaching to it.   If it were more certain that the parties did not apprehend the legal incidents of the estate, a court of equity could not intervene for the reformation of the conveyance: the mistake would be of law, and not of fact.   When a written instrument is, in its terms, clear and unambiguous, as is this conveyance, in the absence of fraud, or of mistake of fact, a court of equity can not take jurisdiction to reform it, because the parties, or either of them, may not have apprehended its legal effect.   As was said by GOLDTHWAITE, J., in *Larkins v. Biddle*, 21 Ala. 256, "there is, in such a case, nothing for a court of equity to lay hold of.   The parties have made their own contract, and a court of equity can not change it."

2.   It is true that there was a line of decisions, of then recent origin, prevailing when this conveyance was executed, and the contracts sought to be enforced were entered into, which would have led to the conclusion, that though the conveyance, by appropriate words, and the words for that purpose generally employed, created an equitable separate estate, that was not its character in contemplation of law; that it was a statutory separate estate, and the capacity of Mrs. Kelly to contract, or to bind it, was not dependent upon the terms of the conveyance, but upon the statute defining and regulating the separate estates of married women.   These decisions were not only in direct antagonism to a series of former decisions which had been acted upon by the profession, and accepted by the community as a correct and conclusive exposition of the law, touching a question of vital importance, but they were anomalous.   In all the States in which the common law in reference to the property of married women has been abrogated, either by constitutional or by statutory provisions, and the wife clothed with capacity to hold property owned by her at the time of marriage, or which after marriage she becomes entitled to, so far as we have discovered, the constitutional or statutory provision has not been construed as subverting, or as affecting equitable separate

estates,—the creation of the donors of property, and not the creation of the law. They arise from the terms of a gift, or a devise, deed, or other instrument, into which the donor may introduce such uses, trusts, or limitations, as are deemed by him most expedient to effectuate his purposes.—Wells' Separate Property of Married Women, § 71. The estate created by the statute is strictly a *legal estate*, for the recovery of which the wife must sue at law, and in her own name, unless, in the particular case, there be some circumstances rendering legal remedies inadequate, or peculiarly of equitable cognizance. It has the incidents, qualities and properties, and no other, attached to it by the law of its creation. Therefore, the original decisions of this court, remaining of unquestioned authority until the line of decisions to which we have referred was made, had affirmed that the statute had reference only to the estates of its creation, estates made separate by operation of law, and did not refer to, or operate upon estates the donors of property created, in the contemplation of a court of equity deemed separate, and which would have been so taken and esteemed if the statute had not been enacted.—*Gerald v. McKenzie*, 27 Ala. 166; *Friend v. Oliver, Ib.* 532; *Willis v. Cadenhead,* 28 Ala. 472; *Hardy v. Boaz,* 29 Ala. 168; *Pickens v. Oliver, Ib.* 528; *Smith v. Smith,* 30 Ala. 642; *Cannon v. Turner,* 32 Ala. 483; *Huckabee v. Andrews,* 34 Ala. 646. The doctrine and the authority of these cases have been fully restored, and the line of decisions to which reference has been made deliberately overruled.—*Short v. Battle,* 52 Ala. 456; *McMillan v. Peacock,* 57 Ala. 127; *Hooks v. Brown,* 62 Ala. 258; *Grimball v. Patton,* 70 Ala. 627; *Turner v. Kelly, Ib.* 85.

The correctness of the later decisions, and of the former decisions which they follow, is not questioned; but it is insisted, as the doctrine announced by them was not prevailing when the conveyance was executed and the contracts were made, the validity of each ought not to be determined by them, but by the decisions then regarded as authoritative, which, it must be presumed, were in the contemplation of the parties. This proposition is wholly irreconcilable with the theory, that by mistake of fact any term or limitation was introduced into the conveyance the parties did not intend introducing. It assumes that the conveyance conforms to the intention of the parties, and was purposely made in view of judicial decisions supposed to support it, as creating a statutory, and not an equitable estate. If the fact were apparent—if it were not mere matter of presumption—that the conveyance and contracts were made in view of these decisions, all that can be said is, the parties were under a mistake as to the law. They knew the decisions were conflicting; they exercised their own judg-

[Kelly v. Turner; Masson v. Turner.]

·ment as to the effect and consequences of the conflict; and if they havé been mistaken, the mistake is of law. Agreements made and acts done under a mistake of law, in the absencè of fraud, misrepresentation, or an abuse of confidence, superinducing the mistake, are generally held valid and obligatòry. The rules and principles of law are regarded as certain, though they may not have been the subject of immediate adjudication, or though there may be in reference to them conflicting adjudications. In *Lyon v. Richmond*, 2 John. Ch. 60, Ch. Kent said : "The courts do not undertake to relieve parties from their acts and deeds fairly done, though under a mistake of law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind. And to suffer a subsequent judicial decision, in any one given case, on a point of law, to open and annul every thing that has been done in other cases of the like kind, for years before, under a different understanding of the law, would lead to the most mischievous consequences." The same principle was announced in *Hardigree v. Mitchum*, 51 Ala. 151, in which relief from acts done and acts induced was claimed, because into them the party had been led by the theory of a judicial decision which was subsequently overruled. When titles have been acquired, or judgments rendered, or contracts performed, or transactions completed, a subsequent judicial decision, reversing or overruling decisions upon which they may have been founded, can not be invoked to undo or annul them.—*Jacobs v. Moragne*, 47 N. Y. 81; *Kenyon v. Weltby*, 20 Cal. 637; *Baker v. Pool*, 56 Ala. 14. The doctrine now contended for, in its practical application, reaches far beyond this conservative principle. Executory contracts of defined legal operation, and of recognized validity, must be pronounced incapable of enforcement, because made while there were erroneous decisions denying them validity, and while there were other decisions affirming their validity. If the doctrine were established, judicial decisions would operate like statutes, as an enactment of the law as it shall exist in the future,—not as a declaration of the law as it exists presently; judicial errors would be perpetuated, and justice disappointed. The just presumption is, the contracts having been fairly made, that the parties regarded them as valid, and intended their performance. The reversal of the erroneous decisions, the restoration of the former decisiohs, which had been acted upon as of unquestioned correctness, simply removes all obstacle to the legal accomplishment of the just purposes of the parties, works no injustice, and imposes no burden not voluntarily assumed.

3. A married woman, having an equitable separate estate,

not restrained or limited by the instrument from which it is derived, is, in a court of equity, so far deemed a *femme sole* that she may by her contracts charge such estate to the extent she could bind herself personally if unmarried.   The form or character of the contract is not material : it may be written or oral, under or without seal ; nor is it of importance whether, in the making of the contract, or by its terms, there is, expressly or by implication, a reference to the estate as the source from which satisfaction of the contract is intended.   The theory is, that in the making of the contract the parties do not intend a vain, useless thing or ceremony ; and as a married woman is incapable of binding herself personally, the just presumption is, that, as she has capacity to bind her equitable separate estate, satisfaction from it was intended.—*Sadler v. Houston,* 4 Port. 208 ; *Forrest v. Robinson, Ib.* 44 ; s. c., 2 Ala. 215 ; *Bradford v. Greenway,* 17 Ala. 797 ; *McCroan v. Pope, Ib.* 612 ; *Collins v. Rudolph,* 19 Ala. 616 ; *Collins v. Lavenberg, Ib.* 682 ; *Ozley v. Ikelheimer,* 26 Ala. 332 ; *Caldwell v. Sawyer,* 30 Ala. 382 ; *Cowles v. Morgan,* 34 Ala. 535 ; *Gunter v. Williams,* 40 Ala. 561 ; *Nunn v. Givhan,* 45 Ala. 370 ; *Brame v. McGee,* 46 Ala. 170 ; *Short v. Battle,* 52 Ala. 656 ; *Burrus v. Dawson,* 66 Ala. 476 ; *Turner v. Kelly,* 70 Ala. 85.   Effect is given to her engagements or contracts, not as appointments or appropriations of so much of the separate estate as may be necessary to satisfy them, but upon the principle that, in a court of equity, she has capacity to make them, though not binding upon her personally, and as there is a want of remedy at law, and the separate estate is a trust, in the exercise of its general jurisdiction over the administration of trusts, the court will intervene, and charge them upon the estate.—*Ozley v. Ikelheimer, supra; Turner v. Kelly, supra.*

In some of the authorities to which we have referred it is said, that the contract creates a lien ; and in some, that it creates a charge upon the estate.   These expressions, however general, are qualified and limited by the facts of the particular case before the court, and must not be severed from the conclusions reached.   When properly read and construed, they were intended only to distinguish the contracts of a *femme covert,* from contracts of personal obligation, valid and operative whether there is an estate or specific property on which the court has jurisdiction to charge them.   It is mere misconstruction, against which it is scarcely possible for a court to guard, to read them as intended to express the proposition, that the contract, of itself, confers upon the creditor any specific or vested right of property in the separate estate, or an ascertained, defined right to charge it, or that the estate is thereby incumbered to any greater extent than the property of a person

*sui juris* is incumbered by his general contracts, to the satisfaction of which it is his moral and legal duty to appropriate the property he presently owns, and his future acquisitions, saving such as the law may exempt. The creditor has the right, through the agency of a court of equity, to charge the separate estate with the satisfaction of the engagement or contract; the right arises by operation of law, without the tacit or express stipulation of the parties. A general creditor of a person *sui juris* has a kindred right, by the pursuit of legal remedies, to charge all the property of the debtor not exempt. The distinction between the two rights is, that the creditor of a married woman is limited and confined to the equitable separate estate she had when the contract was made; the creditor of one *sui juris* can reach all property the debtor owns, without regard to the time of its acquisition.

It is only by the pursuit of legal remedies a general creditor, or a creditor not having a conventional lien, acquires any vested or specific right in and to the property of the debtor. Until such remedies are pursued, to which the law may attach a lien or charge, the debtor has full dominion over his property, the courts can not disturb. In the exercise of the dominion, if there be no fraud, he may convert one species of property into another, or at pleasure he may alienate, and the courts will not interfere to restrain him.— *Wiggins v. Armstrong*, 2 John. Ch. 144; *Moran v. Dawes*, Hopkins Ch. 365; *Adler v. Fenton*, 24 How. 407. This is equally true of a married woman having an equitable separate estate. Ownership of it, dominion over it, is not displaced or lessened because she has entered into contracts which, if not performed, a court of equity will charge upon the estate. She may sell it, or she may by exchange convert it into another species of property, without offending any right of the creditor. If the creditor would restrain her in the exercise of the right, he must pursue with diligence the remedies the law appoints.

The equities of general creditors of a living person are in all respects equal; there is no foundation upon which a distinction between them can be rested. They are entitled to like remedies; the consideration of the debts due to them is not more or less valuable and meritorious; and their rights spring from the consideration,—not from the order of time in which the debts may have been contracted. Therefore, a court of equity, in the administration of equitable assets, will generally distribute them equally and *pari passu* among all the creditors, "without any reference to the priority or dignity of the debt; for courts of equity regard all debts in conscience as equal *jure naturali*, and equally entitled to be paid."—1 Story's Equity, § 554. But, though this is the favorite policy of a

court of equity, yet, when a judicial preference has been established, by the superior legal diligence of any creditor, that preference, in the administration of the assets of a living person, the court always preserves and protects.—*McDermott v. Strong*, 4 John. Ch. 687; *Lucas v. Atwood*, 2 Stew. 378; *Eaton v. Patterson*, 2 Stew. & P. 11; *Evans v. Welch*, 63 Ala. 250. Upon this principle, a judgment creditor, having exhausted legal remedies, resorting to a court of equity to reach and subject equitable assets, or property an execution at law will not reach, acquires a preference the court preserves against the claims of creditors subsequently intervening.—*McDermott v. Strong, supra; Edmeston v. Lyde*, 1 Paige, 637; *Henriquez v. Hone*, 2 Edw. Ch. 120.

The creditor of a married woman, resorting to a court of equity to charge her equitable separate estate, must, of necessity, in the bill describe the property which it is sought to subject. *Ravisies v. Stoddart*, 32 Ala. 599. It is upon this property only the decree can operate; for the contract is not of personal obligation, and a decree affecting or binding personally the married woman can not be rendered. In this respect, the suit has some of the characteristics of a proceeding *in rem*, though in form and essential elements it is a suit *inter partes*. A *lis pendens* is created by the institution of the suit, operative against all persons coming in subsequently, by purchase or otherwise. It creates a specific lien, if successfully prosecuted to final decree; the decree taking effect, by relation, from the day of the service of summons to answer. The vigilance of the creditor first instituting suit, and prosecuting it with diligence, entitles him to priority, of which other creditors, less vigilant, who have "loitered on the way," have no just reason to complain. The bill of Mrs. Turner having been first filed, and duly prosecuted, entitled her to priority. A specific lien was created by the decree rendered, taking effect, by relation, from the service of process, of which it would not be equitable to deprive her.

We find no error in the decree of the chancellor, and it must be affirmed.

STONE, J., dissenting, on the point raised on former appeal.