# Turner *v.* Kelly; Masson *v.* Kelly.

*Bills in Equity by Creditors, to subject Equitable Estate of Married Women; Cross-Bill for Reformation of Deed.*

1. *Equitable estate of wife; by what words created.*—A conveyance of property to a married woman, "to have and to hold as her separate property and estate, free from the debts and liabilities of her husband, to her and her assigns forever," though these words are used only in the *habendum* clause of the deed, creates in her an equitable estate, as distinguished from one which is statutory.

2. *Same; how charged.*—As to the equitable estate of a married woman, the settled doctrine of this court is, that a court of equity will regard her as a *femme sole*, capable of binding it by her contracts as fully as if she were *sui juris*, unless limited and restrained, either expressly or

[Turner v. Kelly; Masson v. Kelly.]

by necessary implication, by the instrument creating the estate; and this without regard to the form of contract, the consideration which entered into it, or her relation to the debt as principal or surety.

3. *Same; same.*—In charging her equitable estate with her contracts, the court does not proceed on the theory that they are valid and operative as appointments, but on the broader ground of her full capacity to contract, and her presumed intention to charge by her engagements the estate which she has the capacity to charge; and this presumption must prevail where, as here, she joined with her husband in executing a promissory note given for the purchase-money of a tract of land, although the land was conveyed to her as a part of her statutory estate, and a mortgage on it was given to secure the payment of the note.

4. *Statutory provisions as to estates of married women.*—"With the exception of some adjudications which have been either expressly overruled, or have ceased to be regarded as authoritative, the uniform course of decision has been, that our statutes relate to and provide for estates of married women which are made separate by operation of law—estates created by descent, gift, or in some other manner, without words which would have created a separate estate before our statutes on the subject; and not to estates which, independent of legislation, would have been separate by operation of the instrument or contract creating them."

5. *Conversion of statutory into equitable estate.*—There is no provision in the statutes creating and regulating the separate estate of married women, nor is there any thing in the policy of those statutes, which prevents the husband from renouncing and repudiating the rights thereby secured to him, as he might renounce his marital rights at common law, and consenting to a conversion of the statutory into an equitable estate in the wife. "The *dictum* in *Coleman v. Smith* (55 Ala. 377), that a statutory can not be converted into an equitable estate, must not be regarded as authoritative, save so far as it may be applicable to contracts between husband and wife for an exchange of property, or by which the husband acquires, or seeks to acquire, an interest in the statutory estate of the wife." (STONE, J., *dissenting.*)

6. *Reformation of deed, on ground of mistake.*—An innocent omission or insertion of a material stipulation, contrary to the mutual intention of the parties to a written instrument, will be corrected by a court of equity, and the instrument reformed in that particular, on a timely application after the discovery of the mistake; but, to justify such relief, there must be a plain mistake, distinctly alleged and clearly proved, as to the intention of the parties at the time the instrument was executed, and not as affected or developed by subsequent events, or by the conquences resulting from the instrument as executed; especially after it has been spread upon the public records, and when innocent parties may suffer by the correction.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. H. AUSTILL.

In these cases, which were argued and submitted together, both in this court and in the court below, the first bill was filed on the 3d January, 1877, by Mrs. Anna G. Turner and her husband, Arthur J. Turner, against Mrs. Emma C. Kelly and her husband, Washington C. Kelly; and sought to subject to the payment of a promissory note for $5,000, signed by the defendants, dated Mobile, March 27th, 1875, and payable one year after date, to Mrs. A. J. Turner or order, Mrs. Kelly's interest in certain real estate in the city of Mobile. Mrs. Turner was the niece of Mrs. Kelly. The debt evidenced by the note for

$5,000 was contracted on the 27th March, 1873, when Mrs. Turner, having money belonging to her statutory estate, loaned $5,000 to Mrs. Kelly, taking a note signed by her and her husband, payable twelve months after date; which note, the interest being paid annually, was renewed on the 27th March, 1874, and again on the 27th March, 1875. Mrs. Kelly was a daughter of Hope H. Slatter, deceased, from whom she inherited an undivided one-fourth interest in the real estate sought to be subjected by the bill; and she obtained another undivided interest of one-fourth from each of her brothers, S. F. Slatter and H. H. Slatter, under conveyances executed by them respectively, copies of which were made exhibits to the bill.

The conveyance from H. H. Slatter to Mrs. Kelly, which was dated the 6th November, 1869, and duly acknowledged and recorded on the same day, purported to be executed "in consideration of the love and affection" of the grantor for his said sister, "as well as in consideration of the sum of $9,000 paid to me [him] by the said Emma;" and conveyed to Mrs. Kelly the grantor's undivided one-fourth interest in the property," to have and to hold the said property, together with the appurtenances, unto her, the said Emma C. Kelly, as her separate property and estate, free from the debts and liabilities of her husband, and to her and assigns forever." The conveyance from S. F. Slatter, which was dated the 3d August, 1871, and duly acknowledged and recorded on the same day, used the same words of conveyance, and recited as its consideration the present payment of $16,000; but of this sum only $8,000 was paid in cash, and for the residue two promissory notes were given by Mrs. Kelly and her husband, for $4,000 each, payable one and two years after date, with interest from date, and secured by mortgage on the land conveyed by the deed. Of these two notes, the one first falling due was afterwards transferred to said H. H. Slatter, and the other to J. H. Masson; and they obtained decrees in said court, foreclosing the mortgage, and subjecting to sale the interest in the lands conveyed to Mrs. Kelly by the deed of S. F. Slatter. These decrees were obtained before the bill of Mrs. Turner was filed, and their rendition was averred in her bill. At the sale under the decrees of foreclosure, the interest sold did not bring enough to satisfy the decrees; and thereupon, on the 28th February, 1877, said Masson filed a bill against Mrs. Kelly and her husband, seeking to subject to the unpaid balance due on the note held by him the interest in the lands which Mrs. Kelly acquired under the conveyance from H. H. Slatter. He alleged in his bill, that he became the owner of said note in regular course of trade, before its maturity, and for full value paid; that he knew of said Emma's ownership of the property under the deed of said H. H.

Slatter, which, as he was advised, created in her an equitable estate, and that he took said note on the credit thereof. Mrs. Turner's bill also alleged, "that she loaned said money to said Emma C. on the faith and credit of her ownership of said property, knowing of her purchases from her said brothers, and having entire faith and confidence in her ability to repay the same, and being satisfied that, if she failed to pay said note according to its tenor and effect, said property could be made liable to pay the same, as said deeds create in her an equitable separate estate, in which the marital rights of her said husband are clearly excluded." Each of the bills alleged the insolvency of said Washington C. Kelly, the husband.

Mrs. Kelly filed an answer to each bill, admitting the execution of the notes held by the complainants respectively, and the execution of the conveyances shown by the exhibits, on the consideration therein recited; but she denied that either of the conveyances created, or was intended to create, or could create in her, an equitable estate, so far as the money paid was, in each case, a part of her statutory estate, which could not be converted into an equitable estate. She alleged that, at the time the conveyance to her was executed by H. H. Slatter, she held a mortgage on S. F. Slatter's interest in the property, to the amount of about $4,500, and had other moneys coming to her in New Orleans, belonging to her statutory estate, and said H. H. Slatter proposed, if she would release said mortgage, and pay him $4,500 in addition, out of her moneys and claims due her, that he would convey to her his one-fourth interest in the property; that she accepted this offer, as it was a very liberal one, and left her husband and said brother to have the proper papers prepared, and never read over the deed executed to her by said brother, either before or after it was signed and delivered. She alleged, also, that the money borrowed from Mrs. Turner was, as Mrs. Turner well knew, borrowed for the use and benefit of said W. C. Kelly, and was used and lost by him in unfortunate speculations; that Mrs. Turner, being her niece, was well acquainted with the condition of her property, and knew that all her estate was inherited from her father, or bought with moneys so derived; and she denied that any part of her property could be subjected to the payment of her husband's said debt. She denied that Masson was an innocent purchaser of the note held by him; alleged that he knew the consideration of the note, and bought it at a discount; and denied that it was a charge on her interest in the land acquired under the deed from H. H. Slatter.

On the 9th November, 1877, having filed her answers to these bills as above stated, Mrs. Kelly filed her original bill against her husband, Masson, and Mrs. Turner, alleging the filing and

[Turner v. Kelly; Masson v. Kelly.]

purpose of said bills, as above set forth, and the consideration and execution of said conveyances to her by her brothers; alleging, also, that there was no intention on the part of the grantors or herself to change the character of the estate; and praying that the conveyances might be reformed, if necessary (which she denied), and her statutory estate in the property be protected and established against the complainants' demands. On the 12th February, 1877, when Mrs. Kelly first learned, as she alleged, that there was doubt or controversy as to her interest under the conveyance from said H. H. Slatter, she applied to him for a correction of any mistake by the execution of a new deed; and he thereupon executed to her another deed, which was made an exhibit to her bill, and which she prayed might be enforced and established against the demands asserted by the complainants in their respective bills. This deed, referring to the former deed of November 6th, 1869, as having been made "in consideration of $9,000 to me [grantor] in hand paid by Emma C. Kelly," contains the following recitals: "And whereas the money paid for said purchase of said interest was the separate statutory estate of the said Emma, derived to her by inheritance from her father and her uncle, which fact was well known to me at the time; and whereas it has been made known to me that it is doubtful whether said conveyance made by me to said Emma C. conveys to her a statutory separate estate, the same as the money paid to me and invested in the purchase of said property; and whereas it was not contemplated, at the time, to make any change in the tenure of her estate and property, but the same was an investment for her of her statutory separate estate; and whereas the said Emma has called on me to reform said conveyance," &c.; and then conveys the property to Mrs. Kelly, "to have and to hold as her statutory separate estate under the laws of Alabama."

The defendants to the bill filed by Mrs. Kelly, Masson and Mrs. Turner, interposed demurrers to it, for want of equity, which the chancellor overruled; and the three causes being submitted together, he held that Mrs. Kelly was entitled to relief —that her statutory estate could not be converted into an equitable estate, as attempted by the original deed from H. H. Slatter; that neither Mrs. Turner nor Masson was entitled to protection as a *bona fide* purchaser for valuable consideration without notice, and that Mrs. Kelly was entitled to a decree establishing and protecting her interest in the property, under the conveyance from H. H. Slatter, as her statutory estate. He therefore dismissed the bills of Mrs. Turner and Masson, and rendered a decree in favor of Mrs. Kelly under the bill filed by her. From this decree, Mrs. Turner and Masson each appeals, and assigns as error the decree dismissing their respective

·bills, the overruling of their demurrers to Mrs. Kelly's bill, and the decree rendered in her favor.

BOYLES, FAITH & CLOUD, and G. Y. OVERALL, for Mrs. Turner, and JOHN T. TAYLOR, P. HAMILTON, and THOS. N. MACARTNEY, for Masson, appellants.—The deed of H. H. Slatter to Mrs. Kelly shows a, clear and and unequivocal intention to exclude the marital rights of her husband, and creates in her an equitable estate, or separate estate by contract.—*Jenkins v. McConico*, 26 Ala. 213; *Brown v. Johnson*, 17 Ala. 232, and cases there cited; *Short v. Battle*, 52 Ala. 460. As to such an estate, the settled doctrine of this court is, that a married woman is considered in equity as a *femme sole*, and capable of binding it as fully as if she were *sui juris.*—17 Ala. 612, 797; 32 Ala. 472; 34 Ala. 541; 40 Ala. 561; 52 Ala. 456. The deed of Slatter was spread upon the public records of the county long before the appellants' debts were contracted, and was notice to all the world of the character of Mrs. Kelly's estate; and persons dealing with her had a right to rely on it, as the appellants did. As against their debts, the deed can not be reformed to their injury, even if an honest mistake were clearly proved, unless it was also shown that they are chargeable with notice of such mistake.—51 Ala. 478; 49 Ala. 186. But a court of equity will not reform a deed under any circumstances, on the evidence shown in these cases. The attorney who wrote the deed is dead, and there is no proof of any mistake on his part; nor, indeed, is there any proof as to what his instructions were. The parties themselves were satisfied with the deed, and made no effort to change it until after the rights of these creditors had attached; and they now seek to avoid the legal consequences of their deliberate act, by declarations that they did not intend such consequences. Whether they intended the legal consequences which have ensued, is immaterial, since the evidence shows, in corroboration of the deed, that they intended to guard against the improvidence and thriftlessness of the husband, and to deprive him of all control over the property; and they might do voluntarily what a court of equity would have sanctioned on the application of Mrs. Kelly. This is not only true as to the interest which Slatter gave to his sister, but also as to the interest which was conveyed in consideration of the money paid. At common law, the husband might renounce his marital rights in and to his wife's property, and did impliedly renounce them by failing to assert them.—38 Ala. 64; 29 Ala. 233; 28 Ala. 351; 25 Ala. 415. In like manner, he may renounce the rights which the law gives him in his wife's statutory estate; and when he does voluntarily renounce them, especially under circumstances which would have authorized his removal as trustee,

the transaction will be upheld in equity. Here, the husband was not attempting to acquire a greater interest in his wife's property, as in *Coleman v. Smith* (55 Ala. 377); he simply relinquished all his own rights, and allowed the property to be settled as a court of equity would have settled it. That it does not lie with the donor now to testify as to his intentions, see 51 Ala. 172. If Mrs. Kelly did not read over the deed, it was her own fault, and can not affect third persons.—56 Ala. 341; 91 U. S. 50.

JAMES BOND, *contra.*—The deed of H. H. Slatter to Mrs. Kelly, construed in connection with the constitutional and statutory provisions then of force, as judicially construed by this court in its then latest decisions, created simply a statutory estate, as distinguished from an equitable estate, or separate estate created by contract. The constitutional provision declared, that the property of any woman, acquired by her before marriage, or to which she might become entitled after marriage, " by gift, grant, inheritance, or devise, shall be and remain her separate estate and property, and shall not be liable for any debts, obligations, and engagments of her husband," &c. The language of Slatter's deed is, " to have and to hold the said property, together with its appurtenances, unto the said Emma C. Kelly, as her separate property and estate, free from the debts and liabilities of her husband ;" following substantially the words of the constitution. The case of *Molton v. Martin,* 43 Ala. 651, construing this constitutional provision in connection with the statutes on the subject, had been pronounced only a few months before the deed of Slatter was executed, and had attracted very general attention on the part of lawyers throughout the State. It settled a rule of property, and was a decision of the court of last resort; and all persons, attorneys and their clients, had a right to rely upon its binding authority. That case was followed by several other decisions of this court, and its authority was not questioned until, after the lapse of five or six years, it was overruled by *Short v. Battle,* 52 Ala. 406, when other judges were on the bench. In overruling that decision, the later case did not overturn its ruling on the point now in controversy; and if such had been its necessary effect, or express purpose, it would not be allowed a retrospective operation, so as to overturn acts done and contracts executed in good faith, and in reliance upon its authority.—*Hardigree v. Mitchum,* 51 Ala. 154; *Lyons v. Richmond,* 2 Johns. Ch. 59.

As to the construction of the deed, and its effect, the case of *Molton v. Martin* has not been overruled; and it was cited approvingly in *Coleman v. Smith,* 55 Ala. 377, to the point that the wife's statutory estate can not, by any contract between them, or

any arrangement between them and a third person, be converted into an equitable estate. Any other construction would contravene the purpose of the constitutional and statutory provisions, and violate the express provision that the wife's property "shall be and· remain her separate estate, and shall not be liable for the debts of her husband." The court is asked, in this case, to decide that the parties did what the law declares they could not do, and what they testify they did not intend to do. As to the $9,000 paid, the valuable consideration of Slatter's deed, no change of estate was or could be effected by the parties; and neither the terms of the deed, nor any evidence in the case, shows an intention on their part to create a different ·estate in the interest which was voluntarily conveyed. The intention as to each interest was the same, the terms used are the same, and the legal conclusion is the same. The parties themselves were satisfied with the deed as written, and its legal effect was never questioned, until the decision in *Short v. Battle*, creating a doubt as to its construction, gave rise to this litigation; and they hastened to correct any possible mistake, in the light of the new decisions of this court, by a reformation of the deed. The mistake, if any, was promptly corrected by the grantor, and no relief is asked against him. As against Mrs. Turner and Masson, Mrs. Kelly asks to have the new deed from Slatter established and enforced, and her trust estate in the property protected. Mrs. Turner is Mrs. Kelly's niece, and is chargeable with actual notice of all the facts connected with the title to the property; she knew, also, that the money was borrowed for the benefit of Mrs. Kelly's husband, and that her estate was not liable for it. . The circumstances under which Masson bought the note asserted by him, preclude him from relief or protection as a purchaser for valuable consideration without notice; and the circumstances under which the note was executed, conclu- ·sively repel any intention on the part of Mrs. Kelly to charge thereby her equitable estate, even if such should be the legal construction placed on the deed from Slatter.—*Jacques v. Methodist Church,* 17 Johns. 548.

As to the proper construction and operation of the deed from Slatter, the appellee relies on the case of *Molton v. Martin,* 43 Ala. 651, and subsequent cases adhering to it. As· to the re- formation of the deed, and the protection of her statutory estate, she relies on the cases of *Stone v. Hale,* 17 Ala. 557; *Lavender v. Lee,* 14 Ala. 688; *Hogan v. Smith,* 16 Ala. 600; *Coleman v. Smith,* 55 Ala. 377; *Warfield v. Ravisies,* 38 Ala. 518.

BRICKELL, C. J.—These causes, in· all respects but one involving the same questions, and dependent upon the same state

[Turner v. Kelly; Masson v. Kelly.]

of facts, were argued and submitted together. The object of the bill filed by Mrs. Turner, and of the bill filed by Masson, is to condemn to the satisfaction of promissory notes held by them respectively, made by Mrs. Kelly and her husband, the interest of Mrs. Kelly in certain real estate, situate in the city of Mobile, which is averred to be her equitable, as distinguished from her statutory estate. The interest derived by Mrs. Kelly under the conveyance from S. F. Slatter, pending these suits, was sold under a decree of the Court of Chancery, foreclosing a mortgage (the validity and priority of which is undisputed), executed by her and her husband, to secure the payment of the purchase-money; consequently, the controversy is now limited to the liability of the estate derived by her under the conveyance from her brother, Hope H. Slatter, of date November 6th,. 1869. This conveyance purports to be made in consideration of natural love and affection, and of nine thousand dollars paid by her in money. The *habendum* clause is, to have and to· hold "as her separate property and estate, free from the debts and liabilities of her husband." At the time of the conveyance, the estate it passes was of the value of eighteen thousand dollars. Mrs. Kelly had a debt due her from her brother, S. F. Slatter, of about forty-five hundred dollars, and moneys· coming to her from the estate of a deceased uncle, in the hands of his executors in New Orleans. With this debt, and from the moneys in New Orleans, the moneyed consideration recited in the· conveyance was paid, the debt and money being her statutory estate. The object of the grantor was to make a gift to her of one-half of the interest, and an investment of the debt and money, so that her husband could not· waste or. squander them.

A clear and unequivocal intention to exclude the common-law marital rights of the husband—to create a separate, independent ownership in the wife, free from the control or interference of the husband—is essential to the creation of an equitable separate estate. Particular language, technical forms of expression, need not be employed, though they may be more appropriate, and may not leave the intention embarrassed by doubt, or give room for controversy as to its existence. The question is one of intention; and whenever that can be clearly and certainly collected from the instrument creating the estate, or from the terms of a gift, the equitable estate arises.—*New-man v. James*, 12 Ala. 29; *Brown v. Johnson*, 17 Ala. 232;· *Jenkins v. McConico*, 26 Ala. 213. Nor is it material in what part of the instrument the words excluding the control and interference of the husband, and declaring the independent ownership of the wife, may be found. The *habendum* clause of a. deed may not be the aptest place for their insertion; yet, if

found there, and they clearly indicate an intention to vest the entire interest in the wife, excluding the husband, the intention must prevail. The gift in the present case, as expressed in the *habendum* clause, is to Mrs. Kelly, *as her separate property and estate;* and excluding the right of the husband, or ownership in any other person than the wife, creates an equitable separate estate. When the word *separate* is employed, as indicating the character and quality of the estate or ownership of a married woman, it would be difficult to understand it as signifying more or less than an estate or ownership unconnected with, severed and disunited from her husband.

2. As to her equitable separate estate, the doctrine which has prevailed in this court is, that in a court of equity she is to be regarded as a *femme sole,* capable of binding the estate as fully as if she was *sui juris,* unless her power is expressly, or by necessary implication, limited and restrained by the instrument creating the estate. Her engagements and contracts, whether verbal or written, with or without seal, in the form of negotiable paper, or of paper not negotiable,—whether she is a principal debtor, or a surety,—are her debts to the payment of which her equitable estate is liable. Entering into such engagements and contracts, on her own account or credit, and not on that of her husband, the intention to keep and perform them must be presumed, as is such intention imputed to those who are *sui juris,* when they enter into contracts and engagements. Of course, they are not legal contracts or liabilities, on which remedies can be pursued in courts of law, nor do they bind her personally. Her capacity is to charge or bind her equitable estate; and while it can not be extended further, to that extent is plenary, the instrument creating the estate not limiting or restraining it.—2 Brick. Dig. 86, §§ 211–15; *Short v. Battle,* 52 Ala. 456. Some dissatisfaction with this doctrine was expressed in *Nunn v. Givhan,* 45 Ala. 375; but it was said, while it could not be extended to cases not clearly and strictly within the principles settled by former decisions, it could not be departed from, or overruled. It is too well settled, by an unbroken current of judicial decision, from the time the question was first presented in this court,—is too much relied on in the transaction of business, and the foundation of the title to too much property,—for any disturbance of, or departure from it, whatever may be the individual opinions of a judge.

Whether the debt to Mrs. Turner was contracted through the agency of Mrs. Kelly, or of her husband; whether the money borrowed was applied to her uses, or to the use of, or wasted by the husband, is not material. She joined in the note given for it, and she had full capacity, by joining in it, to

[Turner v. Kelly; Masson v. Kelly.]

bind her equitable estate, whether she made the contract, and was the recipient of the consideration, or whether her husband made it, receiving the consideration, and she was only his surety. Standing in a court of equity as a *femme sole*, with the capacity to hold and dispose of her equitable estate, her capacity to contract debts, and assume liabilities, so far as her estate is concerned, is that of a *femme sole;* and in whatever form, or on whatever legal consideration, such debts are contracted, a court of equity will charge the estate with their satisfaction. Not that her contracts are valid and operative only as appointments of and from the equitable estate; but upon the broader ground, that as to such estate she is a *femme sole*, with full capacity to contract.—*Ozley v. Ikelheimer*, 26 Ala. 332; *Murray v. Barlee*, 3 Myl. & Keene, 209.

3. The debt preferred by Masson is the note of Mrs. Kelly and her husband, for the second annual installment of the purchase-money of the interest in the real estate purchased by Mrs. Kelly of S. F. Slatter. At the time of the purchase, she paid in cash one-half of the purchase-money, and gave notes, in which her husband joined, for the other half. A conveyance in fee was made to her, and a mortgage executed by her and her husband to secure the payment of the notes given by them, for the unpaid purchase-money. It is insisted, the facts exclude any intention on the part of Mrs. Kelly to charge any other estate she may have had, than that acquired by the conveyance to her cotemporaneous with the mortgage, and exclude any presumption that the mortgagee relied on any other security than that the mortgage afforded.

If Mrs. Kelly had not been under the disability of coverture—if she had been *sui juris*—the debt would have imposed a personal liability; the mortgage would have been a simple security for its payment. The creditor would have been under no obligation to pursue the mortgage security, to the relief of the debtor from personal liability. If the mortgage security proved unavailing, or insufficient, the debtor could not have claimed the debt was discharged, or extinguished. The debt would have continued, and whatever of estate he had, liable to the satisfaction of debts, would have been liable to its payment. When a married woman is empowered with the capacity to contract—whenever the obligation of her contracts extends to her equitable estate, as fully and completely as if she were *sui juris*—if she gives a security binding a part only of such estate, upon what principle, or upon what good reason, can it be said that the contract is operative only to the extent of the security, and, if that is unavailing or insufficient, the force and obligation of the contract perishes. It is not necessary to the validity and operation of her contracts that a purpose to charge

her separate estate shall be expressed, or that she should entertain the particular intent that it shall be bound. Nor is it essential that those who deal with her should rely exclusively on the liability of her separate estate As surety for her husband, or for a stranger, her contracts bind her equitable estate, though credit is extended as well on the integrity and solvency of the principal, as on the liability equity will fasten on the estate.

If her contracts were valid and operative only as appointments of and from her estate—if an intention to bind the estate was an indispensable element of the contract—it may be that, when a particular security is given, the appointment would be co-extensive only with the security, and an intention to bind any other part of the estate would be excluded. But it is not upon the ground of intention, or of appointment, that a court of equity proceeds in charging her equitable estate. It is upon the broader ground, that as to such estate, her capacity not being limited by the instrument creating it, she is a *femme sole*— has a *status* independent of, and separate from that which, at law, coverture imposes. True, it is often said, when the question has been presented, whether contracts to bind her estate should not refer to or mention the estate, that from her contract, independent of her husband, not on his account and credit, the intention to bind her estate would be presumed; otherwise the contract, as to her, would be without validity. But it is no where, in the decisions of this court, affirmed or recognized, that an intention to charge her estate is essential, save so far as such intention is a necessary element of every contract of a person *sui juris*—that the contract will be kept and performed, and if broken, that to its satisfaction whatever of property the law subjects shall be appropriated, This intention the law conclusively presumes, and no evidence gainsaying it can be heard, unless the contract, by its own terms and limitations, excludes it. Adhering to the law, as we find it settled by former decisions, the debt due to Masson is chargeable on the equitable estate of Mrs. Kelly, other than that covered by the mortgage, which she owned when the debt was contracted.

4. The statutes creating the separate estates of married women do not, in terms, refer to the equitable separate estate, nor indicate any purpose to affect such estate, whether existing at the time of their enactment, or subsequently created. Without interfering with the *jus disponendi* of donors, and of the capacity of a *femme covert* to take and to hold, as recognized in a court of equity, they can not be construed as extending to the equitable estate. The estate the statute creates is a *legal*, not an equitable estate. All legal remedies for its protection are prosecuted in the name of the wife alone, and no judgment

can be rendered affecting it, to which she is not a party. As was observed in the case of *Warfield v. Ravisies*, 38 Ala. 518, and as has been said substantially in other cases, property held by the wife under the statutes is not her *separate estate*, in the broadest sense of that term. The qualities and characteristics of the two estates are essentially different. The unqualified right of the husband to receive, and to manage and control the statutory estate, taking the rents, income or profits, without the consent of the wife, express or implied, without liability to account for them; a right which she can not impair, and which can be affected only by his infidelity, or incapacity; the specific mode of alienating it, in which the husband must join; subjecting it to a narrow, limited liability only, for debts founded on a particular consideration, whether such debts are contracted through the agency of either husband or wife; the conversion of it into a strictly legal, rather than an equitable estate,—distinguish it from the latter estate, and render it peculiarly, as it is most often denominated in our decisions, a *statutory estate.* With the exception of some adjudications which have been either expressly overruled, or have ceased to be regarded as authoritative, the uniform course of decision has been, that the statutes " relate to, and provide for estates of married women, which are made separate by operation of law; estates created by descent, gift, or in some other manner, without words which would have created a separate estate before our statutes on the subject; and not to estates which, independent of legislation, would have been separate by operation of the instrument or contract creating them."—*Pickens v. Oliver*, 29 Ala. 528; *Smith v. Smith*, 30 Ala. 642; *Cannon v. Turner*, 32 Ala. 483; *Cowles v. Morgan*, 34 Ala. 535; *Short v. Battle*, 52 Ala. 456. The estate taken by Mrs. Kelly is, consequently, by force of the terms of the conveyance, an equitable, not a statutory estate; and her power to bind it is not derived from, or restrained by the statutes, but from the quality and incidents of the estate, as it is by law defined from the terms employed in its creation.

5. The decree of the chancellor seems to rest on the proposition, that, as the moneyed consideration supporting the conveyance was the statutory estate of the wife, the same character is, of necessity, impressed on the estate the conveyance creates, whatever may be its terms. The argument is, that by no contract or transaction, in which husband and wife participate, whether between themselves only, or with a stranger, can a statutory be converted into an equitable estate. There are no words in the statute, forbidding such conversion, nor are there words which authorize it. Such conversion, it is supposed, contravenes the spirit and policy of the statute; and as the power

of the wife over her equitable would be larger than that she can exercise over the statutory estate, the purposes of the statutes could be defeated. If this be true, the statutes must often operate not only to disable husband and wife, but to lessen and narrow the power of donors to determine the character, quality and incidents of the estates they may create. Love and affection of a brother for a sister, is not only expressed as a consideration for the conveyance, but is shown by the evidence to have entered into, and induced it as largely, as the pecuniary consideration. If it had been the only consideration, there could have been no doubt that it rested wholly in the power of the donor, to create an equitable or a statutory estate. Without offending any law, he could have imposed on the gift such limitations, qualities or incidents, as he chose, there being no attempt to create a perpetuity. There are no provisions in the statute, which can be supposed to lessen his power of disposition, or the capacity of the donee to take, because the pecuniary consideration was derived from the *statutory* estate. Nor is it the spirit or policy of the statutes to impress upon the estate of the wife, irrevocably and immutably, a particular character and quality, though her necessities should require it to be changed. That such a change may be proper and necessary, is indicated by the facts of this case. The controlling purpose of the investment of the funds of the wife in real estate, was to prevent them from passing into the possession and under the control of the husband, as under the statute they must have passed, who it was feared would squander them. The same consideration may properly have induced the conversion of the title to the real estate into an *equitable* estate, so that the wife alone would have the right to take its rents and profits, and not the husband freed from liability to account for them. So far from it being inconsistent with the policy or spirit of the statutes, that a *statutory* should be converted into an *equitable* estate, in the event of the removal of the husband from the trusteeship, the statute contemplates, and by its own terms works the conversion.—Code of 1876, §§ 2717–18 ; *Locke v. Bell*, 57 Ala. 112. Such a conversion operates a deprivation of no other rights than such as under the statute attach to the husband, and attach to him as a trustee for the wife. He can not be compelled to assert these rights, nor to assume the trusteeship, as he was not at common law compelled to the assertion of his marital rights. His capacity to refuse to reduce to possession the choses in action of the wife, or to take as his own her personal property in possession, was undoubted at common law. He could repudiate all claim as husband to the property of the wife, elect to treat, control and hold it as hers; and if he did, the title of the wife was not divested; and none accrued to

[Turner v. Kelly; Masson v. Kelly.]

him.—2 Brick. Dig. 73, §§ 65–66. A gift from the husband to the wife was, if not otherwise expressly limited, a gift to her sole and separate use.—*McMillan v. Peacock*, 57 Ala. 127. Now, if the husband assents, as there is no doubt he did in the present case, to an investment of the moneys of the wife, her *statutory* estate, in the purchase of real estate, and a conveyance to the wife, which excludes his trusteeship and rights under the statute, there is no one who can justly complain, as there was none who could justly complain at common law, if he waived and abandoned his marital rights. And if it be, that there was just cause to apprehend a waste and loss of the funds of the wife, because of his improvidence and incapacity to control them discreetly, there was cause of removal from the trusteeship, and, in the event of his removal, the *statutory* would have been converted into an equitable estate. Then, under that state of facts, the conveyance accomplished no more than could have been obtained by a decree of a court of equity. Parties may voluntarily do that which a court of equity would order done, and if they do, the court will support their acts. We hold, that the character and quality of the estate created by the conveyance to Mrs. Kelly, is not to be changed, because the pecuniary consideration entered into it was her *statutory* estate. The *dictum* in *Coleman v. Smith*, 55 Ala. 377, that a *statutory* can not be converted into an *equitable* estate, must not be regarded as authoritative, save so far as it may be applicable to contracts between husband and wife for an exchange of property, or by which the husband acquires, or seeks to acquire, an interest in the *statutory* estate of the wife. *Reel v. Overall*, 39 Ala. 138.

6. The cross-bill filed by Mrs. Kelly, for a reformation of the conveyance to her, can not be maintained. When there has been an innocent omission or insertion of a material stipulation, contrary to the mutual intention of the parties to a written instrument, a court of equity, on a timely application, after the discovery of the mistake, will interfere for its correction. Relief will be granted, however, only when there is a plain mistake, clearly made out by satisfactory proofs.—1 Story's Eq. §§ 155–57. It is the intention of the parties at the time the contract is executed, which is to be considered and ascertained, and not what they could or would have done, if they had anticipated subsequent developments, or consequences, resulting from the contract. The substance of the evidence is no more than a disclaimer now by the parties, of all intention to change, by the conveyance, the tenure of Mrs. Kelly's estate—to convert it into an *equitable* estate. It is not upon evidence of this kind a court of equity will reform a solemn instrument, which has been spread upon the public records, inviting transactions with

the grantee, from which innocent parties must suffer, if the reformation is made.

The decrees of the chancellor must be reversed, and the causes remanded, for further proceedings in conformity to this opinion.

STONE, J., *dissenting.*—I do not concur in the foregoing opinion. I do not think that Mrs. Kelly, by private act, such as was adopted in this case, could convert her statutory separate estate into an equitable estate. The record shows that her brother, Slatter, conveyed a one-half interest in the property to her by gift. In the title he made to her he employed words excluding the marital rights. This undivided half interest she acquired and held by virtue of that conveyance, and it was and is her equitable estate. Her contracts fastened a charge on that undivided half interest. The other undivided half, being her statutory estate, she did not charge by her notes and mortgages.—Code of 1876, § 2709; *Coleman v. Smith,* 55 Ala. 368.