# Louisville Coffin Co. *v.* Stokes.

*Bill in Equity by Creditor to Charge Equitable Estate of Married Woman.*

1. *Equitable estate of married woman; how created.*—On a sale of property belonging to the equitable separate estate of a married woman, if a note is taken for a part of the purchase-money, payable to her, the character of her estate is not thereby changed, but the note and the debt evidenced by it belong to her equitable estate.

2. *Same; how charged.*—As to her equitable separate estate, a married woman is regarded in equity as a *femme sole*, with capacity to charge it by her contracts as fully as if she were *sui juris;* and when she contracts a debt, though without the particular intent to charge her estate, the court will presume the intent, and hold her estate liable, rather than hold her act vain and nugatory.

3. *Same; husband as agent.*—A married woman, owning an equitable separate estate, may authorize her husband to manage it as her general agent; and the fact of such agency being clearly shown, the same incidents attach as in the case of any other general agency, and she is bound by his acts as any other principal would be bound.

4. *Agency; liability of principal for acts of agent.*—The authority of a general agent is measured by the usual scope and character of the

business he is empowered to transact; and for any act done by him which is natural and customary in the management of such business, the principal can not avoid liability because of any secret instructions or limitations imposed on the agent.

5. *Liability of wife's equitable estate, for debts contracted by husband as agent.*—If a married woman, owning an equitable separate estate, invests her money in a particular business, which she authorizes her husband to conduct and manage as her general agent, she can not avoid liability for debts contracted by him in the purchase of merchandise within the scope of the business, in the natural and usual mode of conducting such business, by alleging secret authority and instructions to buy for cash only.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 11th October, 1883, by the Louisville Coffin Company, a foreign corporation, against Mrs. Sallie E. Stokes, her husband, C. M. Stokes, and Peter F. Alba; and sought to subject to the satisfaction of a debt, alleged to be due from Mrs. Stokes to the complainant, a debt due to her by said Alba. A garnishment was also sued out against said Alba, and he paid the money due by him into court. The complainant's debt was contracted in August and September, 1882, for coffins and other articles pertaining to the business of an undertaker, sold to C. M. Stokes & Co., under which name said C. M. Stokes carried on business, as the agent of his wife, in the city of Birmingham. In connection with this business, he also carried on the business of a livery and sale stable, which was bought by Mrs. Stokes from one W. F. Orr. The conveyance by Orr, which was dated July 22d, 1882, and a copy of which was made an exhibit to the bill, recited as its consideration the payment of $6,400; and the property was conveyed to Mrs. Stokes, "to her sole and separate use, free from the management, marital control, and interest of her said husband." On the 28th September, 1883, Mrs. Stokes sold and conveyed the property, which included a lease of the land, and all the personal property pertaining to the business of the livery-stable, to said Peter F. Alba; and the debt sought to be condemned in his hands was the unpaid portion of the purchase-money. The bill alleged that the property conveyed by Orr was bought with money belonging to the equitable separate estate of Mrs. Stokes, and was held by her as her equitable separate estate; that she alone owned the entire business carried on under the name of C. M. Stokes & Co., and it was conducted by her husband as her agent; that "said bill of goods was sold to her by complainant on the credit of her said equitable separate estate, as represented by said property and business; that she bought said goods for the purpose of said business, and it was her intention to charge her said equitable separate estate with the payment of said debt."

A joint answer was filed by Mrs. Stokes and her husband, in which they admitted the purchase of the property from Orr, and the ownership of Mrs. Stokes as her equitable separate estate; but denied that she " has at any time carried on a livery-stable business or undertaker's business, either in her own name, or in the name of C. M. Stokes & Co.;" averred " that said business was carried on by C. M. Stokes alone, and he alone was liable for any debts contracted in running the business;" that he " was not authorized to bind her or her property by any contract he might make, but, on the contrary, was expressly forbidden to do so." Mrs. Stokes, further answering, alleged that, while said C. M. Stokes held possession of her property as her husband, " she never knew, or authorized, or ratified any attempt on his part to bind her or her property, and never authorized him to take the income or profits of her property, if any, to pay his debts;" that she never authorized him to buy any goods on her credit, and that the complainant's debt was contracted by him on his own credit. A demurrer was incorporated in the answer, on the ground that the bill did not show that the debt sought to be condemned in the hands of Alba belonged to the equitable separate estate of Mrs. Stokes.

The chancellor overruled the demurrer, but dismissed the bill, on final hearing on pleadings and proof; holding that the complainant's debt was not chargeable upon the equitable estate of Mrs. Stokes, because it was contracted by her husband without her knowledge or authority. The complainant appeals from this decree, and here assigns it as error; and there is a cross-assignment of error by consent, based on the overruling of the demurrer to the bill.

MOUNTJOY & TOMLINSON, for appellant.

R. II. PEARSON, contra.

CLOPTON, J.—It is averred in the bill that the money, which was invested in the livery-stable and undertaker's business, was the equitable separate estate of Mrs. Stokes; and a copy of the conveyance to her is made an exhibit, by which it is shown that the property was conveyed for her sole and separate use. A sale of the property, taking a note for a part of the purchase-money, payable to her, does not operate to change the character of the estate. There is no error in overruling the demurrer to the bill.

The bill alleges that the money of Mrs. Stokes was invested in the business, and that it was carried on by her in the name of C. M. Stokes & Co., by and through her husband as her authorized agent and manager. A married woman is deemed

[Louisville Coffin Co. v. Stokes.]

in equity a *femme sole* in respect to her equitable separate estate, with capacity to charge the same, in the same manner, and to the same extent that she could bind herself personally, if *sui juris*. The contract may be in writing, or in parol; and there need not be any reference to her separate estate. It is sufficient that she professes to act as a *femme sole*. A court of equity, recognizing her capacity to hold separate property, also recognizes the incidental capacity of contracting debts, and assuming obligations which shall be a charge on it, though not binding on her personally. Having an equitable separate estate, and contracting a debt, a court of equity, which invests her with the capacity to possess the equitable estate, will, rather than hold the act vain and nugatory, presume, in avoidance of wrong and injustice, the intention to charge the estate with the debt, though there may be no particular intent.—*Kelly v. Turner*, 74 Ala. 513; *Masson v. Kelly*, 70 Ala. 85.

A married woman may authorize her husband to manage her equitable separate estate as her general agent. Because of the peculiar relation, and of the legal implication that the will of the wife is subordinate to, and under the control of the husband, the agency should be established by clear and satisfactory evidence, and should not be the result merely of the marriage relation. But, where she does authorize him, and the agency is clearly established, its effect and construction are the same as an agency between other persons; and she is bound by his acts in respect to charging her equitable separate estate, as any other principal is liable for the acts of his general agent. Cord on Rights of Mar. Women, §§ 1301, 1306; Schoul. on Hus. & Wife, § 277. The wife may confer on the husband, as her general agent and manager, any power which she possesses.

It is a universal and indisputable rule, that " the authority of a *general* agent is measured by the usual scope and character of the business he is empowered to transact. By appointing him to do that business, the principal is considered as saying to the world, that his agent has all the authority necessary to the doing of it in the usual way."—Pars. on Mer. Law, 135. If the agent does no more than is natural and customary in managing and transacting such business, any private limitations and instructions will not affect the rights of third persons, to whom they are not communicated. If, in transacting the undertaker's business, it is usual to purchase goods on a credit, *secret* instructions to purchase for cash only will not avail to prevent the separate estate of Mrs. Stokes from being charged with debts so contracted.

The evidence of Mrs. Stokes, and the averments of the verified bill filed by her against her husband, clearly show that he

was her general agent in managing and transacting the business, in which the money, admitted by her answer to be her equitable separate estate, was invested. A court of equity can not permit a married woman, who, professing to act as a *femme sole*, invests money of her equitable separate estate in a particular business, and authorizes her husband or any other person to generally manage and transact it, to repudiate the liability of her separate estate for a debt contracted by him, in the purchase of merchandise in the natural and usual mode, and within the scope of the business, by alleging a *secret* authority to buy for cash only.

The decree overruling the demurrer is affirmed. The final decree is reversed, and the cause remanded for further proceedings.