# Neville, *et al. v.* Cheshire.

### *Ejectment.*

(Decided Nov. 18, 1909. 50 South. 1005.)

1. *Husband and Wife; Conveyance by Husband to Wife; Effect.*— A deed by a husband to a wife prior to Acts 1886-7, p. 80, created in the wife an equitable, separate estate not within the statute requiring a married woman's separate estate, to be deducted from her dowry or distributive share in her husband's estate, nor within the statute enabling a married woman to take and hold property owned by her at the time of her marriage, or to which she might subsequenty become entitled.

2. *Same.*—The provisions of Acts 1886-7, p. 80, have no application to a conveyance by the husband to the wife where the husband died before the passage of the act, since the death of the husband rendered the wife a femme sole, and the act had no application to her or her property.

3. *Same; Title Acquired.*—Where a husband executed to his wife a conveyance of property and died before the passage of the married woman's act, and the wife executed a conveyance to a trustee for the benefit of the husbands' heirs, the wife acquired only the equitable title, the legal title descending to the heirs of the husband, so that the married woman's act did not divest the title of the heirs of the husband, and a will subsequently made by the wife was in ineffectual to convey title.

4. *Ejectment; Title to Support; Equitable Title.*—An equitable title is insufficient to support an action of ejectment.

APPEAL from Lee Circuit Court.

Heard before Hon. A. A. EVANS.

. Statutory ejectment by Sue K. Neville against J. M. Cheshire. Judgment for plaintiff and defendant appeals. Affirmed.

BROWN & KYLE, for appellant.—Appellants held the legal right to the property in controversy and was entitled to the affirmative charge. The deed from McDaniel to his wife by virtue of the statute subsequently passed conveyed the legal title.—*Milan v. Coley*, 144 Ala. 537; *Gunn v. Hardy*, 107 Ala. 612; *Simmons v. Richardson*, 107 Ala. 704; *Rooney v. Michael*, 84 Ala. 589. The original will together with the endorsements thereon was offered and properly admitted.—Secs. 4280-81, Code 1896; *Newsome v. Holesapple*, 101 Ala. 622. Plaintiffs and defendants claim from the common source, and hence, plaintiff is not required to trace title beyond that source.—*Florence v. Schall*, 107 Ala. 531; *Leech v. Carthaus*, 141 Ala. 503. Upon the death of her husband, the condition of coverture was removed, and she became a femme sole and the title to the land vested eo instanti upon his death.—*Haynie v. Miller*, 61 Ala. 64; *Jenkins v. McConnico*, 30 Ala. 143; *Knight v. Bell*, 22 Ala. 205; *Andrews v. Huckabee*, 30 Ala. 152.

J. M. CHILTON, and HOUSTON & POWELL, for appellee.—A deed from a husband to a wife prior to the married woman's law conveyed only an equity and not the legal title.—*McMillan v. Peacock*, 57 Ala. 127; *Helmetagg v. Frank*, 61 Ala. 67; *Lehman-Durr & Co. v. Bryan*, 67 Ala. 558; *Gluck v. Cox*, 75 Ala. 310; *Seals v. Robinson*, 75 Ala. 363; *Washburn v. Gardner*, 76 Ala. 533; *Loeb v. McCullough*, 78 Ala. 533; *Carrington v. Richardson*, 79 Ala. 107; *Gaston v. Weir*, 84 Ala. 196; *Hammaker v. Hammaker*, 58 Ala. 232. As to the contract of sale, the wife is to be treated as a femme sole with full

power to charge the equity in every respect.—*Allen v. Terry,* 73 Ala. 123; *Kelly v. Turner,* 74 Ala. 513; *Jones v. Reese,* 65 Ala. 134, and cases cited. The married woman's act had no effect whatever upon contract separate estate of married woman which came into existence prior to the adoption of the act.—*M & V. R. R. Co. v. Bynum,* 93 Ala. 338; *Connolly v. Mahoney,* 103 Ala. 568; *Maxwell v. Grace,* 85 Ala. 577; *Wetzer v. Kelly,* 83 Ala. 440. The husband died before the act became operative and the title descended to his heirs and was not divested by the act.—*Powe v. McLeod,* 76 Ala. 417; *McMillan v. Peacock,* 57 Ala. 127.

MAYFIELD, J.—This is a statutory action in the nature of ejectment. Both parties claim title through a common source—Thomas J. McDaniel. The plaintiffs and defendant on appeal were respectively the plaintiffs and defendant on the trial. Plaintiffs claim title through a deed from the common source of title, Thomas J. McDaniel, to his wife, Sarah Ann McDaniel, of July 7, 1876, and through the last will of Sarah Ann McDaniel, of August 19, 1889. The defendant claims title through the same deed from the common source to Sarah Ann McDaniel, and thence through conveyance from her, as grantee, to J. E. Williams, as trustee, for the beneficiaries, children or heirs of Thomas J. McDaniel, named therein, of the same date as the deed to Sarah Ann McDaniel from her husband, Thomas J. McDaniel, and thence through deeds from the trustee to the beneficiaries named therein, of January 30, 1891, and by deeds from them to the plaintiffs of August 12, 1890, and of December 15, 1890.

Thomas J. McDaniel, the husband, died in August, 1876. Sarah Ann McDaniel, the wife, died in August, 1890. She was in possession of the lands up to the time

[Neville, et al. v. Cheshire.]

of her death. The defendant was her tenant as to the land at the time of her death. Soon thereafter he became the tenant of the beneficiaries named in the wife's deeds to the trustee, from whom he subsequently purchased. The last date at which he began to hold for the beneficiaries after the wife's death is not shown. Whether he at any time after the wife's death held for plaintiffs, or recognized their title before becoming the tenant of the beneficiaries under her deed, is not without dispute. The beneficiaries named in her deed of July 7, 1876, the day her husband conveyed to her, were the heirs and children of her husband. The plaintiffs, who claim under her will of August 19, 1889, were probably her own heirs, being her neices; she not having any children or descendants. While the claims are not made as such, the contest is really between the heirs of the husband and those of the wife.

The prime, if not the sole, question of importance involved, is the legal effect of the two deeds of July 7, 1876; the one by the husband to the wife, the other by the wife to a trustee, for the use and benefit of the husband's heirs or children. The deed from the husband to the wife was an attempt to pass the fee to the wife, and would have passed it, but for the marital relations then existing between the parties. The one from the wife was intended to pass the remainder in fee to the children or heirs of the husband, but reserving a life estate to the grantor, with right to sell and convey, jointly with her husband, during her life. This it would have done, but for the fact that at the date thereof the grantor was a married woman. So we must decide what effect the marital relations of the parties to the first deed had upon it, and what effect the fact that the grantor to the other was a married woman had upon it, what was the law of this state at that particular time governing each

[Neville, et al. v. Cheshire.]

of these transactions, and what effect, if any, "the new married woman's law" of February 28, 1887 (Acts 1886-87, p. 80), had upon these two transactions.

According to the ancient English common law, which came to Alabama as a common-law heritage, marriage made a bi-unity of husband and wife, and the husband was it. In him was thereby merged all the property and contractual rights of the wife, which, fortunately for the wife, continued only during coverture. Death of her master or divorce from him would restore to her her property right or power to contract or be contracted with. Under this common-law fiction of bi-unity of husband and wife, the wife's personal property became absolutely that of the husband, he had the complete jus disponendi, and it was liable for his debts, and he took a sole estate in her lands during coverture. She could not dispose of them by gift, deed, or will, or contract as to them, not even with her husband (her legal self). Her very and sole earnings belonged to her husband, though she alone was physically or naturally able to earn the bread for herself and children. Though physically, mentally, and moraly she was all of the bi-unity, legally she was nothing. Parliament could have changed this any day, but allowed it to remain the law for centuries. It was the law of England when Blackstone said that "the English law was the perfection of human reason, the product of matured experience." It was also the English law when Bentham, the pupil of Blackstone, characterized it as "a fathomless and boundless chaos, made up of fiction, tautology, technicality, and inconsistency, and the administrative part of it a system of exquisitely contrived chicanery, which maximizes delays and denials of justice."

This common-law doctrine was so cruel, unjust, and inhuman at one time that it shocked the moral sense of

the rulers, and led the courts of chancery to timidly, and partiality in some instances, take the wife under their benign protection. At common law a man could not, if he would, give his land to his wife, not even that which he had received from her by virtue alone of the marriage and the law. Some writers say it was because they were but one person in law, and some assign other reasons; but they all agree that a gift or deed of land from the husband to the wife during coverture had no effect on the legal title—as to the gift or deed it was void, as were all other contracts made between them. But courts of equity came to the relief of the wife, and would support and protect such gifts or deeds, so far as the equitable title was concerned, when not otherwise fraudulent. Consequently, at law, such gifts or deeds were void. In equity, if fair, just, and not fraudulent, they created in the wife what was classed as an equitable separate estate, vesting in her the entire exclusive interest, since otherwise the transaction, which was intended to have some effect, would have had none in law or equity. A conveyance by the husband to the wife without reservation or qualification was held to be a clear and unmistakable intentional relinquishment of the husband's rights to the wife, and courts of equity would enforce that intention.

This estate of the wife thus created was her separate estate by virtue of contract and equity, and not of common law or statute. But for the law, common or statutory, the conveyance would have vested in her the entire legal and equitable estate. Conveyances by the husband directly to the wife by reason of this equitable doctrine were considered and treated exactly as were their separate estates created by conveyances from the husband to a trustee for the use of the wife, or as any other estate made separate without the aid of legislation. This

kind of an estate she was capable of alienating or encumbering as if she were sole.—*McMillan v. Peacock*, 57 Ala. 127; *Turner v. Kelly*, 70 Ala. 85. This equitable estate was not within the statutes which required her separate estate to be deducted from her dower or distributive share of her husband's estate. Her separate estate referred to in the statute was her estate created by the Constitution and statutes.—*Harris v. Harris*, 71 Ala. 536. But this equitable estate would not support an action of detinue or ejectment, or other action which required a legal title.—*Gluck v. Cox*, 75 Ala. 310; *Meyer v. Sulzbacher*, 75 Ala. 424.

The deed of the husband to the wife prior to February 28, 1887, was invalid at law, but valid in equity. The equitable separate estate thus created was not within the operation of the statutes which enabled the wife to take and hold the property owned by her at the time of the marriage, or to which she might become entitled subsequently.—*Seals v. Robinson*, 75 Ala. 370. This equitable separate estate created by deed from the husband to the wife was, in many respects, an anomalous estate or interest in land. It was clearly and uniformly distinguished from the wife's separate estate created by the Constitution or statutes, and was not, therefore, within the purview of the various statutes, prior to 1887, regulating and defining her estates. It was held at first not to be distinguishable from estates conveyed by the husband to a trustee for her use. This was later doubted, but adhered to, because it had become a rule of property.—*Washburn v. Gardner*, 76 Ala. 599.

In that case it was held that it did not divest the legal title out of the husband, or vest it in her, as in the case of a conveyance to a trustee for her use, but that the husband remained the holder of the legal title, and therefore the trustee, and that the legal title did not vest

[Neville, et al. v. Cheshire.]

in her upon the death of the husband and trustee.— *Powe v. McLeod,* 76 Ala. 418. In that case, Stone, C. J., says: " The problem is: What is the status of the property thus conveyed and held? The conveyance is inoperative at law; and does it not follow, that in any relief which a court of law can administer the property is that of the husband, unaffected by his abortive attempt to divest the title out of himself? And has the wife any interest in or right to the property, other than the equitable right to invoke the power of the chancery court to perfect that which the husband, by force of the relation which he sustained to his wife, was incompetent to do? And is this mere equitable right of the wife the equivalent of an estate secured to her sole and separate use? Possibly this has become a rule of property, which it would be unwise to disturb. In that event the proper remedy would be with the Legislature, not with us. We do now, however, hold ourselves concluded from re-examining the principle asserted in the seventh head-note of *Goodlett v. Hansell, supra* (66 Ala. 151), should the question come again before us." In this same case, Chief Justice Stone, speaking of the estate, title, or interest the wife acquires by gift or deed directly from the husband, says that it has been declared, by three previous divisions of the court, referred to, that the property thus acquired "becomes the equitable separate estate of the wife, which she can fasten a charge upon by any promise or contract of hers to pay money; in other words, that it has all the incidents of property secured to her sole, separate, or exclusive use. If this were an open question in this court, we think much might be said against its correctness."

In the subsequent case of *Loeb v. McCullough,* 78 Ala. 537, the same learned Chief Justice, in referring to what he said above added that in that case it was left an open

question, but that the rule, since first announced in *Mc-Millan v. Peacock,* 57 Ala. 127, had been so often followed that it had be come a rule of property, and that the court would not disturb it; that if a change was desirable the Legislature could administer the proper relief. In the case last above referred to, the court expressly overruled the case of *Turner v. Kelly,* 70 Ala. 85, in so far as held that the husband and wife could, by contract or conveyance, convert her statutory separate estate, thus following the older case of *Coleman v. Smith,* 55 Ala. 377, which had been declared dictum and departed from. In this same case of *Loeb v. McCullough,* the seventh headnote in the report of *Goodlett v. Hansell,* 66 Ala. 151, was declared improper. The opinion upon which it was based was held to be dictum, and was overruled, in so far as it held that the husband and wife could convert her statutory estate into an equitable estate, and thereafter the wife could charge it, or sell or otherwise dispose of it, as if she were a femme sole.

So it seems that these estates were not only separate and distinct, but that they were incapable of being converted by the parties one into the other. As to the one, the wife could charge it, or dispose of it, as if sole; as to the other, she could not. The one was without the operation of the married woman's statutes; the other, within. The estate or title of the one was available only in a court of equity; that of the other, in a court of law. —*Carrington v. Richardson,* 79 Ala. 105. In *Rabitte & Gaudin v. Orr Brothers,* 83 Ala. 189, 3 South. 421, Stone, C. J., says: "It has been too often ruled by this court to be further open to controversy that, if a husband make a voluntary conveyance of gift directly to his wife, it vests in her an equitable separate estate, which she has power to charge and does charge by her contracts lawfully made."

[Neville, et al. v. Cheshire.]

In *Maxwell v. Grace,* 85 Ala. 577, 5 South. 319, the husband conveyed land directly to the wife prior to February 28, 1887, the date of the new married woman's law. The land conveyed was subsequently levied upon and sold under an execution against the husband. The wife sued the purchaser at that sale in ejectment and this court held that the wife did not have such title as would support ejectment against the purchaser at that execution sale. In that case the court held that the statute of February 28, 1887, did not vest the wife with the legal title; that the Legislature could not divest title out of one, and vest it in another. The same case held that property acquired by the wife under previous married woman's statutes passed immediately under the dominion of the later act, and thereafter was governed by its provisions. But it did not and could not change the equitable separate estate into a legal estate, for the reason assigned in that case, and for the further reason that it was not an estate acquired under the married woman's statutes, and was not within the influence of any such statutes.—not even of the last.—*McMillan v. Peacock,* 57 Ala. 127.

Another strong and conclusive reason why the married woman's law cannot affect equitable separate estates, such as the one in question, is that they are created by contract and not by statute, and hence they cannot be taken away, changed, or impaired by statute, as they could if created by statute. The Constitutions, state and federal, prevent such result.—*Bynum's Case,* 92 Ala. 338, 9 South. 185. But a stronger and more conclusive reason than these, why the statute of 1887 did not, and cannot, have any effect in this case, is that it related, and was merely intended to relate, to, or affect, the marital rights and powers of the husband and wife, and no marital relations existed, as between

the grantor and grantee, at the time of the passage of this act. The husband had been dead 10 years when the act was passed. His death dissolved all relations of husband and wife. After his death Mrs. McDaniel did not hold the property as his wife or his widow. She was a femme sole at the date of the married woman's law, and it could have no application to her or to her property.

It is unnecessary in this case to decide whether Mrs. McDaniel's deed to the trustee, on the day her husband conveyed to her, passed her equitable interest after her death. It did not pass the legal title, because she did not possess it to pass, and whether it passed the equitable title or not is not necessary or proper to now determine. As Mrs. McDaniel did not acquire the legal title to the land by her deed from her husband, but only the equitable title, and that descended to the husband's heirs at his death 10 years before the married woman's law was enacted, and that act did not and could not have the effect to divest it of the heirs and invest it in her, it follows that the plaintiff did not and could not acquire the legal title under will; and, this being necessary to a recovery in ejectment, the court properly instructed the jury to find for the defendant.

The judgment of the circuit court is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.